2006 ME 16

**Randy McGOWAN**

v.

**STATE of Maine**

Supreme Judicial Court of Maine.

Argued: Nov. 14, 2005.
Decided: Feb. 17, 2006.

Verne E. Paradie Jr., Esq. (orally), Trafton & Matzen, Auburn, for petitioner on appeal.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Fernand R. LaRochelle, Asst. Atty. Gen., Augusta, for State.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] The State appeals from a judgment entered by the Superior Court (Washington County, *Atwood, J.*) granting Randy McGowan's amended petition for post-conviction relief on two of seventeen alleged grounds of ineffective assistance of counsel. The State contends that the court erred in concluding that McGowan's trial counsel's cross-examination of a State witness and his failure to secure the testimony of a blood spatter expert witness both constituted ineffective assistance of counsel. Because we agree with the State's contentions, we vacate the judgment and remand for entry of an order denying the petition.

## I. PROCEDURAL HISTORY

[¶ 2] Randy McGowan was convicted of one count of murder, 17–A M.R.S.A. § 201(1)(A) (1983),[1] following a jury trial in

---

1. Section 201(1)(A) has since been amended to provide gender-neutral language.   P.L.   2001, ch. 383, § 8 (effective Jan. 31, 2003)

1999, for the shooting death of his former girlfriend's boyfriend. McGowan was sentenced to twenty-eight years imprisonment. We affirmed the conviction in a memorandum of decision. *See State v. McGowan*, Mem–00–104 (Sept. 13, 2000). Following his direct appeal, McGowan filed a petition for post-conviction review and a subsequent amended petition.

[¶ 3] The first of two evidentiary hearings on the amended petition was held in April 2004. At the hearing, McGowan, his trial attorney, and his appellate attorney testified. The hearing was held open so that McGowan could obtain expert testimony from a blood spatter expert and a toxicologist. The second evidentiary hearing was held in April 2005. Expert reports from Ross Gardner, McGowan's post-conviction blood spatter expert witness, and Detective Herbert Leighton, the State's post-conviction blood spatter expert witness, were submitted to the court in lieu of testimony. Both McGowan and the State also presented the testimony of expert toxicologists.

[¶ 4] The court found that McGowan had failed to meet his burden of proving ineffective assistance of counsel on fifteen of the asserted grounds, but concluded that McGowan met his burden on two grounds, one related to the manner in which his trial attorney cross-examined State witness Jamie Merrill, and a second concerning his trial attorney's failure to present a blood spatter expert witness. Consequently, the court granted the amended petition, vacated the conviction, and re-stored the matter to the docket for a new trial.

[¶ 5] With respect to the cross-examination of witness Jamie Merrill, McGowan's trial attorney's strategy was to elicit statements from Merrill that were ostensibly damaging to McGowan, and then disprove the statements through the testimony of other witnesses in order to establish that Merrill was untrustworthy. Merrill was McGowan's former girlfriend. Her boyfriend was in McGowan's residence moving her personal belongings out of the residence at the time he was shot. Merrill was asked on cross-examination whether she remembered telling a police officer that McGowan "was a convicted felon" and that "he's not walking away from this one. He has walked away from other ones." She responded "No" to both questions. Neither McGowan's trial attorney nor the State made mention of these purported statements again during the trial.[2]

[¶ 6] The court concluded that as a result of these questions to Merrill, "[t]he jury was left with these unrebutted claims[,]" and that an attentive jury, having seen other Merrill accusations disproved by the trial attorney, could reasonably have believed that these claims were true. The court also found that these accusations produced a fundamentally unfair trial because the trial attorney's cross-examination of Merrill rose to the level of a serious mistake an ordinary fallible attorney would not commit and the prejudice to McGowan was "obvious."[3]

---

(codified as amended at 17–A M.R.S. § 201(1)(A) (2005)).

**2.** The State does not dispute the Superior Court's factual findings on the claim that the trial attorney's cross-examination of Merrill constituted ineffective assistance of counsel. Therefore, we accept the court's finding that trial counsel "never attempted to disprove Merrill's claim that McGowan was a felon or

had 'walked away from other ones (homicides) in the past.' "

**3.** Other allegedly damaging testimony from Merrill that was inquired into on cross-examination, but that the court found the trial attorney had rebutted, or at least attempted to rebut, included Merrill's pre-trial accusations that McGowan had sent her a threatening letter, contacted trial counsel prior to com-

[¶ 7] With respect to the blood spatter issue, the court found that McGowan's and the State's post-conviction blood spatter experts both concluded that the victim was in either a stooped or squat position when shot, and that this evidence supports either McGowan's contention that the victim was crouched in an aggressive position at the time he was shot or the State's theory that the victim was ducking when confronted by McGowan. The court then reasoned that the former theory supports McGowan's trial testimony that the victim was lunging at him with what appeared to be a knife. The court concluded that even though McGowan's expert could not testify as to whether the victim was acting aggressively, "the failure to investigate and secure expert testimony in this regard would meet both prongs of the deprivation of effective counsel test." The State appeals from the Superior Court's judgment.

## II. DISCUSSION

[¶ 8] We consider, in order, (A) the federal and state constitutional standards by which ineffective assistance of counsel claims are judged, and (B) the applicable standard of appellate review. We then apply these standards to determine whether, as the State claims, the court erred when it found ineffective assistance of counsel with respect to McGowan's trial attorney's (C) cross-examination of State's witness Jamie Merrill, and (D) failure to engage a blood spatter expert witness.

A. Constitutional Standards Regarding Ineffective Assistance of Counsel

■ [¶ 9] The Sixth Amendment to the United States Constitution and article I, section 6 of the Maine Constitution ensure that a criminal defendant is entitled to receive the effective assistance of an attorney. The U.S. Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence," U.S. CONST. amend VI, while the Maine Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall have a right to be heard by the accused and counsel to the accused." ME. CONST. art. I, § 6 (2005). The primary purpose of the effective assistance of counsel requirement is to ensure a fair trial. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aldus v. State*, 2000 ME 47, ¶ 15, 748 A.2d 463, 468.

[¶ 10] The Supreme Court and this Court have enunciated two-prong tests for adjudicating ineffective assistance of counsel claims. The Supreme Court's test, as set forth in *Strickland*, holds that:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

[¶ 11] Similarly, our test, first articulated in *Lang v. Murch*, 438 A.2d 914, 915 (Me.1981), was recently expressed as:

[F]irst, whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance

mitting the murder, and owned many guns

and hand grenades.

... below what might be expected from an ordinary fallible attorney; and second, whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense.

*Aldus,* 2000 ME 47, ¶ 12, 748 A.2d at 467 (quotation marks omitted).

[¶ 12] We have previously noted that the federal and state guarantees are virtually identical. *See id.* The burden is on the defendant to prove both prongs. *See, e.g., State v. Brewer,* 1997 ME 177, ¶ 15, 699 A.2d 1139, 1143. Additionally, the test is applied on a case-by-case basis, and evaluations of ineffective assistance of counsel claims are "guided by the overall justness and fairness of the proceeding." *Aldus,* 2000 ME 47, ¶¶ 14–15, 748 A.2d at 468. *See also Roe v. Flores–Ortega,* 528 U.S. 470, 485, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("As with all applications of the *Strickland* test, the question whether a given defendant has made the requisite showing will turn on the facts of a particular case.").

[¶ 13] In applying the test, we begin with the second prong regarding prejudice because if it is determined that there was no prejudice, there is no need to address the first prong regarding whether counsel's performance was deficient. *See Pottios v. State,* 1997 ME 234, ¶¶ 9–10, 704 A.2d 1221, 1223–24; *see also Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (holding that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one"). With respect to the second prong of the analysis, we have noted that "[t]o establish that he has been deprived of a substantial ground of defense, [the petitioner] must demonstrate that trial counsel's performance likely affected the outcome of the trial." *Whitmore v. State,* 670 A.2d 394, 396 (Me.1996). Similarly, in *Strickland,* the Supreme Court noted that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. 2052. The reasonable probability requirement of the second prong means "a probability sufficient to undermine confidence in the outcome." *Aldus,* 2000 ME 47, ¶ 20, 748 A.2d at 471 (quotation marks omitted); *see also Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Accordingly, "a claim of ineffective assistance of counsel requires the defendant to establish that his attorney's performance deprived him of a substantial ground of defense, or that counsel's performance likely affected the outcome of the trial." *Brewer,* 1997 ME 177, ¶ 20, 699 A.2d at 1144 (citations omitted).

B. Standard of Appellate Review

[¶ 14] The United States Supreme Court stated in *Strickland* that "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." 466 U.S. at 698, 104 S.Ct. 2052. Mixed questions of law and fact are generally subject to bifurcated appellate review with the post-conviction court's factual findings reviewed for clear error and its legal conclusions reviewed de novo.[4] *See Ornelas v. United States,* 517 U.S. 690, 696–97, 699, 116 S.Ct. 1657, 134

---

4. The United States Court of Appeals for the First Circuit has specifically held that ineffective assistance of counsel cases warrant de novo review on legal conclusions and review for clear error on factual findings. *Ruiz v. United States,* 339 F.3d 39, 42 (1st Cir.2003).

L.Ed.2d 911 (1996); *State v. Sylvain,* 2003 ME 5, ¶¶ 8–10, 814 A.2d 984, 986–87 (recognizing that we generally review findings of fact for clear error and conclusions of law de novo).

[¶ 15] In contrast with *Strickland*'s recognition that ineffective assistance of counsel claims constitute mixed questions of law and fact, we have reviewed the post-conviction court's findings and conclusions as factual determinations that are reviewed solely for clear error. Thus, in *Aldus* we stated:

> Whether the performance of an attorney falls below the standard is a question of fact. "We will not overturn a post-conviction court's determination as to the effectiveness of trial counsel unless it is clearly erroneous and there is no competent evidence in the record to support it." Likewise, the finding of whether the petitioner was prejudiced by her attorney's error is a factual finding reviewed for clear error.

2000 ME 47, ¶ 14, 748 A.2d at 468 (quoting *Tribou v. State,* 552 A.2d 1262, 1264–65 (Me.1989)) (citations omitted).

[¶ 16] The State essentially argues that we should adopt a bifurcated standard of appellate review, reviewing the post-conviction court's factual findings for clear error and its legal conclusions de novo with respect to both analytical prongs. Because we conclude from the post-conviction record in this case that the court's application of the second prong regarding prejudice was in error regardless of whether we apply the deferential clear error standard of review or the de novo standard, we decline the State's invitation to address this issue.

### C. Cross-examination of State's Witness Jamie Merrill

[¶ 17] As previously explained, McGowan's trial attorney's cross-examination of witness Jamie Merrill employed a strategy of eliciting damaging statements Merrill may have made concerning McGowan, and then disproving the statements through the testimony of other witnesses. As part of this strategy, Merrill was asked if she remembered reporting to police that McGowan was a felon and that he had walked away from other murders. Rather than confirming that she had made statements to this effect, Merrill responded, "No." No further substantive evidence was introduced by McGowan or by the State regarding them.[5]

[¶ 18] The court concluded that the failure to affirmatively disprove the statements so as not to let the jury believe that McGowan was a convicted felon and had walked away from other murders constituted "a serious mistake which an ordinary fallible attorney would not have made." The court also found that the strategy had resulted in prejudice and that McGowan was entitled to a new trial:

> The prejudice to the petitioner as to these ... accusations is obvious. Merrill accused him of being a felon and involved in prior homicides for which he had escaped liability. The jury was left with these unrebutted claims, and, if believed by them, would have so tainted the petitioner that his trial must be seen as fundamentally unfair.

> Because counsel was ineffective in this important respect and prejudice likely resulted, the petitioner is entitled to a

---

5. A State Police detective confirmed that Merrill had been interviewed on two occasions, and he verified certain remarks she made but claimed to have forgotten. However, the detective never confirmed whether Merrill had made the accusations involving prior felonious conduct or homicidal involvement.

new trial and the amended petition will be granted on this basis.

[¶ 19] The trial attorney's cross-examination strategy of seeking to elicit testimony from Merrill that was damaging to McGowan, and then disproving it in order to present Merrill as incredible, was surely apparent to the jury. The attorney's failure to introduce follow-up evidence with respect to the two questions that involved statements that Merrill had no memory of *and, therefore, did not confirm the truth of,* would not have led a reasonable jury to conclude that the statements were, in fact, true. Contrary to the court's conclusion, no evidence introduced at trial suggested that Merrill had accused McGowan of being a felon and involved in prior homicides. Rather, she testified that she did not remember making such accusations to the police. There was no other evidence submitted at trial suggesting that she had.

[¶ 20] In addition, these questions were but two of many questions McGowan's trial counsel asked in his effort to discredit Merrill's credibility.[6] Considered in the context of the entire cross-examination, the trial attorney's failure to rebut the accusations that McGowan was a felon and had walked away from other murders was unremarkable, especially because Merrill did not claim to have made such accusations.

[¶ 21] Accordingly, even if it is assumed that the trial attorney's failure to revisit these questions constituted ineffective assistance, the resulting prejudice, if any, was insubstantial and did not deprive McGowan of a fair trial. Under either a clear error or de novo standard of appel-

late review, we cannot affirm the court's contrary conclusion.

**D. Failure to Present Blood Spatter Expert Witness**

▮ [¶ 22] The court found that McGowan's blood spatter expert witness would have corroborated portions of McGowan's trial testimony. Specifically, the court found that the blood spatter expert would have "support[ed] McGowan's contention that [the victim] was in a crouched position as though he were an aggressor" about to attack him. The court also observed that this evidence "might also support a finding that [the victim] was ducking when confronted with a man pointing a gun at him." The court concluded that "where physical evidence and its analysis would tend to support his claim, the failure to investigate and secure expert testimony in this regard would meet both prongs of the deprivation of effective counsel test." The court reasoned that "[t]his is true, even though [McGowan's blood spatter expert] could not testify that [the victim] was acting aggressively and that another explanation for the deceased's body position could be offered."

[¶ 23] The State argues that McGowan's expert's testimony would have contradicted portions of McGowan's trial testimony. The State notes that both blood spatter experts opined that the bloodstains on the wall were caused from the gunshot entrance wound. Accordingly, the State asserts that the victim must have been facing away from McGowan when he was shot because the entry wound was, according to the medical examiner, above and behind the victim's ear. The State also contends

---

6. McGowan's trial attorney successfully disproved Merrill's pre-trial accusations that McGowan had sent her a threatening letter, conspired with the trial attorney to commit the murder, and owned many guns and hand

grenades. The trial attorney also attempted to impeach Merrill's testimony on other matters, including the timing of the gunshot and her bias against McGowan.

that the court's emphasis on whether the victim was crouching is irrelevant, and that the court's factual finding that McGowan's expert's testimony would have corroborated McGowan's is clearly erroneous. Accordingly, the State argues that the court erred as a matter of law in concluding that McGowan was denied effective assistance of counsel.

[¶ 24] McGowan acknowledges that the testimony of his post-conviction blood spatter expert witness does not establish that the victim had attacked him but only suggests that the victim was squatting or crouched when shot. McGowan's blood spatter expert reported that the blood patterns represent "an odd physical position, one which is certainly not upright at the moment of wounding. The best description would be one of a squat with the head down and upper chest oriented forward (south) of the lower torso and legs." McGowan argues that a jury could have concluded from such evidence that the victim was trying to tackle or lunge at him, and could have reasonably believed McGowan's version of the facts. Consequently, McGowan contends that he was denied effective assistance of counsel.

[¶ 25] McGowan's and the State's post-conviction experts' reports both suggest that the victim was in a crouched position, and both agree that the victim's precise position cannot be determined, although the State's expert opined that "it is highly unlikely the decedent was rushing/lunging the defendant immediately prior to the gunshot." Accordingly, the State's assertion that the evidence can only point to the conclusion that the victim was facing away from McGowan is not supported by the record. Nonetheless, the fact that the victim might have been in a crouched position, as opposed to standing upright, lends no greater support to McGowan's claim that the victim was aggressively lunging at him with a knife. Although blood spatter forensic evidence might have bolstered McGowan's testimony to some degree by corroborating his testimony that the victim was in a crouched position at the moment he was shot, it is neutral with respect to the central issue of the case: whether McGowan shot the victim in self-defense because the victim was aggressively lunging at him.

[¶ 26] The State did not present evidence at trial that contradicted McGowan's testimony that the victim was in a crouched position at the moment he was shot.[7] Accordingly, a blood spatter expert would not have corroborated McGowan's testimony as to a substantial fact that was disputed at trial. More importantly, it would not corroborate McGowan's claim that the victim was the aggressor and that he shot the victim in self-defense. McGowan's own expert conceded that blood spatter analysis cannot determine whether the victim was in an aggressive posture when shot. As the court itself observed, the fact that the victim was in a crouched position can also be interpreted to mean that the victim was ducking at the time McGowan shot him.

[¶ 27] The prejudice, if any, from McGowan's trial attorney's failure to present the testimony of a blood spatter expert witness at trial was insubstantial because

---

7. McGowan contended at the second post-conviction review hearing that the State disputed his contention that the victim was crouching. As evidence, McGowan points to closing statements made by the State, and cross-references his own description of the shooting. However, a review of the closing statements made by the State suggest that while the State *generally* asserted that McGowan's version of the events was incredible and baffling, and specifically criticized many details of McGowan's descriptions of the event, the State did not dispute his testimony that the victim was crouched. In fact, the State in closing stated that the victim's shoulder "could have been at any height."

the testimony could not establish that the victim was in an aggressive posture at the time he was shot. The court's finding that McGowan's trial attorney's failure to present such testimony was so prejudicial as to render the trial fundamentally unfair is not sustainable under either a clear error or de novo standard of appellate review.

The entry is:

Judgment vacated. Remanded for entry of a judgment denying the petition.