**ENTERED** NOV 2 0 2014

STATE OF MAINE

Sagadahoc, ss.

SUPERIOR COURT

SAG-AMH-51271201Y

JED R. MIDDLETON

        Petitioner

    v.

STATE OF MAINE

        Respondent

Docket No. BATSC-CR-12-148

## DECISION AND JUDGMENT

This post-conviction review proceeding, brought pursuant to 15 M.R.S. §§ 2121 *et seq.*, came before the court for an evidentiary hearing December 19, 2013. Petitioner Jed R. Middleton and his post-conviction counsel were present, as was the State's counsel. The hearing was recorded. Both parties filed memoranda after the hearing. Based on the entire record, the court hereby adopts the following findings of fact and conclusions of law, and renders judgment as set forth below.

### Background

In the underlying case, *State v. Middleton*, Me. Super. Ct., Sag. Cty. Docket No. BATSC-CR-10-023, the Petitioner was charged with gross sexual assault, a Class A offense, and multiple counts of unlawful sexual contact, a Class C offense. All of the offenses were alleged to have been committed on dates between 1993 and 1996 against the Petitioner's stepdaughter, Amee Cedergren (formerly Amee Suitter), who was born in 1985. Petitioner was married to Amee Suitter's mother, Linda Middleton, during the period when the offenses were alleged to have been committed.

Petitioner was represented in the underlying case by Donald Lawson-Stopps, Esq., a criminal defense attorney with substantial felony jury trial experience, and experience handling sexual assault cases. The State was represented by Assistant District Attorney Patricia Mador. After being retained to defend the Petitioner in May 2009, attorney Lawson-Stopps met repeatedly with the Petitioner, his sister, witnesses and others, and retained a private investigator to locate and interview potential witnesses. Attorney Lawson-Stopps's case file reflects multiple written communications with Petitioner, in addition to the oral communications between them. Attorney Lawson-Stopps testified that, although the Petitioner was upset and worried about the charges and the prospect of going to trial, he never felt the Petitioner was unable to understand what was happening or to assist in his defense.

As he prepared to defend the case, attorney Lawson-Stopps's theory gradually coalesced around the postulate that the alleged victim was fabricating her allegations in order to get back at the Petitioner for whatever reason, perhaps because Petitioner's marriage to her mother had ended in divorce.

Before trial, the State through ADA Mador made the Petitioner through attorney Lawson-Stopps a plea offer that, had it been accepted, would have resulted in the Petitioner being convicted of two of the Class C charges with consecutive sentences totaling nine years, with all but one year suspended, probation totaling eight years, and incarcerated for a year, and a lifetime sex offender registration requirement. Petitioner did not accept the plea offer. Why he did not accept it is a disputed issue of fact: at the post-conviction hearing, Petitioner testified that the State's plea offer had never been presented and explained to him, whereas his trial counsel testified otherwise.

Attorney Lawson-Stopps testified that, while he could not recall specifics about discussing the plea offer with the Petitioner, his practice as a defense attorney is always to

2

review plea offers with his clients, and he did recall one detail—the Petitioner saying he would rather go to trial than accept a plea offer that would require him to register for life as a sex offender. In fact, this was always Petitioner's position, according to attorney Lawson-Stopps.

The charges went to trial before a jury over three days in June 2010. The Petitioner did not testify at trial. The jury found the Petitioner guilty of all 16 counts in the indictment. Sentencing was deferred to permit a forensic evaluation, in which the Petitioner cooperated, and the report for which was submitted to the court and counsel just prior to sentencing.

At sentencing, the Petitioner's sister and others spoke on his behalf, but the Petitioner himself did not speak. Attorney Lawson-Stopps said that Petitioner was not in any condition to give a coherent statement at sentencing. The court then sentenced Petitioner to 20 years in prison on the Class A conviction, with all but 11 years suspended, and six years' probation, with concurrent sentences on the Class C convictions. When the court asked Petitioner if he understood the sentence he had received, Petitioner said he did not understand anything the court had said, whereupon the court noted a concern about competency and took a recess in order to permit Petitioner to confer with his counsel. After the recess, attorney Lawson-Stopps advised the court that the Petitioner now understood and was ready to proceed.

After sentencing, Petitioner moved for a new trial based on alleged issues with a recording admitted into evidence at trial, which motion was denied. Petitioner's appeal to the Supreme Judicial Court was denied, as was his request to appeal his sentence.

## Issues

The sole basis for the Petition is ineffective assistance of counsel. Petitioner relies on three specific grounds:

- Alleged Failure to Disclose and Explain The State's Plea Offer: Petitioner asserts that his trial counsel failed to disclose and to explain to him the State's plea offer, an offer

that, had it been accepted, would have been much more favorable than the sentence Petitioner received as a result of being found guilty of all charges after trial.

- Alleged Lack of Competency During Trial: Petitioner contends that he was functionally incompetent to stand trial, and that his trial counsel should not have proceeded to trial with an incompetent client, and instead should have requested a competency evaluation.

- Alleged Lack of Competency and Preparation at Sentencing: Petitioner asserts that his incompetent state extended to the point of sentencing, and that his trial counsel failed to prepare him for sentencing and to raise the issue of his lack of competence.

Based on the foregoing arguments, the Petitioner seeks to have his conviction vacated in its entirety.

## Analysis

When a petition for post-conviction review asserts as a ground for relief ineffective assistance of counsel, Maine courts follow a two-step analysis.

The first question is "whether there has been serious incompetenc[e], inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney. . . ." Francis v. State, 2007 ME 148, ¶4, 938 A.2d 10, 11, *quoting* McGowan v. State, 2006 ME 16, ¶11, 894 A.2d 493, 496-97.   The second question is "whether the attorney's performance 'likely deprived the defendant of an otherwise available substantial ground of defense' or 'likely affected the outcome of the [proceeding].'" Francis v. State, *supra*, 2007 ME 148, ¶4, 938 A.2d at 11, *quoting* McGowan v. State, 2006 ME 16, ¶¶11-13, 894 A.2d at 497.   "The standard does not lend itself to categorical rules but rather is meant to be applied on a case-by-case basis . . . ."   True v. State, 457 A.2d 793, 795 (Me. 1983).

In a post-conviction proceeding based on ineffective assistance of counsel, a petitioner bears the burden to make at least an initial showing that the former counsel's performance was deficient and that it deprived the petitioner of a substantial defense or otherwise affected the outcome of trial. *See* True v. State, *supra* at 797 &n.1.   Maine law tracks federal law in this

4

regard. The United States Supreme Court has said that the petitioner's burden on claims of ineffective assistance of counsel is to show that ""there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

With that framework in mind, this decision proceeds to examine each of the grounds on which the Petitioner seeks relief based on ineffective assistance of counsel.

*Ground 1: Alleged Failure to Disclose and Explain Plea Offer*

A defense counsel's failure to communicate a plea offer to a defendant can be the basis for post-conviction relief. *See* Missouri v. Frye, __ U.S. __, __, 132 S. Ct. 1399, 1408 (2012) ("as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). Here, there is no doubt that the State's plea offer, at least with the benefit of hindsight, was much more favorable to Petitioner than the sentence he actually received as a result of being found guilty after trial. Had it been accepted, the State's plea offer would have entailed Petitioner entering a guilty plea to two of the 15 Class C counts, with a sentence on one of four years, all but one year suspended, four years' probation, and a consecutive sentence on the other count of five years, all suspended, with periods of probation totaling eight years. Had Petitioner accepted the plea offer, he also would have been subject to a requirement of lifetime registration as a sex offender. All of the other charges, including the Class A gross sexual assault charge, would have been dismissed. The evidence on this issue can be summarized as follows:

Petitioner testified that he was not made aware of the State's plea offer—or at least did not recall being made aware to the point of understanding it—and would have accepted it had it been adequately explained to him. Petitioner also claims that attorney Lawson-Stopps failed

5

to explain to him the strength of the State's evidence, particularly the evidence reflected in an audio recording of a telephone conversation between Petitioner and Amee Cedergren in which Petitioner made what could be taken as inculpatory admissions by silence or admissions by silence.[1] Petitioner asserts that the plea offer and the strength of the State's evidence been adequately explained, he would have taken the plea offer.

In contrast, Petitioner's trial counsel testified that it is his practice to discuss all plea offers with clients in criminal cases, as well as the risks and benefits associated with taking a case to trial, and that he believed he had followed that practice in this case. Although trial counsel was not able to recall many specifics of his discussion with Petitioner about the plea offer, he specifically recalled that Petitioner was consistently adamant about not agreeing to any outcome that would result in his having to register as a sex offender for life, and in fact said he would rather go to trial than make such an agreement.

Although Petitioner testified differently, the court credits the testimony of attorney Lawson-Stopps, and concludes that Petitioner has failed to show ineffective assistance of counsel on this ground.

*Ground 2: Alleged Incompetence to Stand Trial*

A defense counsel's failure to recognize lack of competence to stand trial can certainly be a basis for post-conviction relief. A defendant is competent to stand trial if the defendant is "capable of understanding the nature and object of the charges against him, comprehending his own condition in reference thereto, and cooperating with counsel to conduct a defense in a rational and reasonable manner." State v. Lewis, 584 A.2d 622, 624 (Me. 1990).

---

[1]    Petitioner's petition for review suggested that attorney Lawson-Stopps failed to review the audio recording before trial, but he did not develop that argument in his brief. In any event, any such argument is contradicted by the fact that Attorney Lawson-Stopps filed a motion *in limine* directed to the recording.

6

At the post-conviction hearing, Petitioner testified that after the charges were brought and essentially during the entire period thereafter, before, during and after trial, he was overwhelmed with suicidal thoughts and utterly incapable of assisting in his defense or testifying at trial or speaking at sentencing. He said he barely exchanged three sentences with his attorney during the trial. Petitioner's post-conviction testimony was bolstered by his sister's testimony to similar effect.

On the other hand, attorney Lawson-Stopps testified that he never noted anything in the Petitioner's behavior during his representation of Petitioner that caused him to question Petitioner's competence to stand trial. Attorney Lawson-Stopps said that Petitioner was upset by the charges and worried about going to trial, but not to the point at which attorney Lawson-Stopps questioned his competence to stand trial.

In addition, Petitioner's statements on the record, although limited, do not reflect any lack of understanding or competence. For example, he indicated he understood the court's explanation of his right to testify and right to remain silent, and that he had decided not to testify. Also, just after the return of the verdict of guilty on all counts—the point at which the Petitioner might be expected to feel most overwhelmed emotionally—he was able to participate in a discussion about post-conviction bail, and able to recall that he did not have any passport to surrender as a condition of bail.

In sum, whenever Petitioner was called on to communicate with the court during the trial, he did so in a cogent manner not in any way indicative of impaired thinking or incompetence. It is also worthy of note that when the Petitioner did not understand what was going in the courtroom, he was able to say so, as he did at his sentencing. In contrast, during the trial, he never said or otherwise indicated that he did not understand what was happening.

7

Equally to the point, the Petitioner underwent a forensic evaluation after verdict and before sentencing, and nothing in that evaluation suggests that the examiner saw or suspected any impairment indicative of lack of competence. Although the evaluation occurred after the trial, it also occurred after the Petitioner knew he had been found guilty, and logically should have been even more prone to depression and suicidal ideation than before his conviction. The fact that even then he did not manifest any signs of incompetence supports the inference that he was not incompetent previously.

Finally, none of those who spoke on Petitioner's behalf at sentencing, including his sister, mentioned any present or previous lack of competence on his part. To the contrary, they spoke of his admirable qualities and contributions to others.

Thus, the fundamental shortcoming in Petitioner's argument is that there is no evidence, other than Petitioner's and his sister's after-the-fact testimony, to support his contention that he was in fact incompetent, or suicidal or incapable of assisting in his defense during the trial. The court does not credit Petitioner's and his sister's post hoc characterization of his mental state. The court does credit the evidence of his mental state as reflected in the trial transcript, in the report of forensic evaluation, and in attorney Lawson-Stopps's testimony, all which are entirely consistent with each other.

For that reason, the court concludes that the Petitioner has failed to meet his burden on this ground as well.

*Ground 3: Alleged Incompetence at Sentencing*

The first support in the trial record for Petitioner's claim of lack of competence came at sentencing, when attorney Lawson-Stopps told the court that Petitioner was not able to speak on his own behalf because he would not be coherent. Some additional support came when,

after the court had imposed sentence and had asked Petitioner if he understood his sentence, Petitioner said he did not understand anything the court had said with respect to sentencing.

Although both of these circumstances certainly indicate that the Petitioner was overwhelmed emotionally and confused, neither of these circumstances necessarily indicates lack of competence, and even more to the point, neither is indicative of ineffective assistance of counsel. Attorney Lawson-Stopps arranged for others to speak on Petitioner's behalf, and he himself presented a sentencing argument that plainly had been thought through in advance and was supported by research and analysis.

Another problem with Petitioner's argument about not being able to participate meaningfully at sentencing is that the court is by no means persuaded that Petitioner would have helped his own cause had he addressed the court. What Petitioner would have said at sentencing is not of record. Defense counsel usually and appropriately recommend that defendants not speak when being sentenced unless what they intend to say will benefit them. If the Petitioner was indeed too overwhelmed with emotion to speak before being sentenced, that may have been a good thing.

As to understanding his sentence, after telling the court he did not understand, Petitioner conferred with his attorney, who soon after assured the court that the Petitioner did understand. Petitioner heard his counsel's assurance and could have contradicted it, by claiming still not to understand.

In any event, Petitioner has failed to prove ineffective assistance of counsel in the sentencing phase.

*Totality of Grounds for Relief*

It is this court's duty to analyze the Petitioner's grounds for relief individually, as this Decision and Judgment has done thus far, and also to analyze them in their totality. Although

9

the court has already decided that none of the three grounds for relief, considered separately, is sufficient to justify relief, it still has to consider all of the Petitioner's grounds in their totality. Considered together, they still do not persuade the court that Petitioner's trial counsel performed at a level below that of the ordinary fallible attorney at any point in the life of the case.

## Conclusion

Having focused on the Petitioner's three grounds for relief individually and having also considered them in their totality, the court finds and concludes that the Petitioner has not met his burden to make at least an initial showing of ineffective assistance of counsel that operated to deprive him of a substantial ground of defense or otherwise affected the outcome of the trial. The court therefore denies the petition.

The order is: Petition for Post-Conviction Review denied after hearing. Judgment for the State of Maine on the Petition.

Dated May 27, 2014

A. M. Horton
Justice, Superior Court