ENTERED AUG 2 2 2014

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
UCD
DOCKET NO. CR-12-7317

JAW-CUM-07-10-14

STEVEN MORRILL

v.                                          ORDER ON POST-CONVICTION REVIEW

STATE OF MAINE

## PROCEDURAL BACKGROUND

Steven Morrill ("Morrill") was charged on February 2, 2011 in a three-count complaint in Docket No. CUMCD-CR-11-1069 with Attempted Kidnapping (Class B), Criminal Restraint (Class C) and Assault (Class C). On April 7, 2011, he was charged in a three-count indictment with the same three counts that appeared in the complaint. These charges stemmed from incidents between January 16 and February 16, 2011 in Westbrook while a child was waiting for the school bus. The interactions were witnessed by the child's mother and a neighbor, Elaina Young. Morrill acknowledged his interaction with the child but denied any wrongdoing. Eventually on October 24, 2011, in CUMCD-CR-11-1069 Morrill pled nolo contendere to count two of the indictment of Class C Criminal Restraint, and in CUMCD-CR-11-6871 he pled nolo to a new information charging Class C Terrorizing involving threats made against the victim and two witnesses in CUMCD-CR-11-11069.

The court (Moskowitz, J.) sentenced him in CUMCD-CR-11-1069 to a five-year period of incarceration with the Department of Corrections with all but eight months

suspended and a two-year probationary term. In CUMCD-CR-11-6871, the court sentenced him to a five-year period of incarceration all fully suspended and a two-year probationary term, to be served concurrently with CUMCD-CR-11-1069. The state dismissed the remainder of the indictment in CUMCD-CR-11-1069 as part of the plea agreement. After being credited for time served, Morrill was released the same day as the plea. Morrill did not appeal his convictions or the sentences. Morrill filed a petition for post-conviction review on October 16, 2012.

## GROUNDS ALLEGED

The petitioner filed the motion now before the court alleging ineffective assistance of plea counsel on several grounds. Morrill states he had an agreement to plead nolo to terrorizing only and the other 3 charges were to be dismissed, but that Criminal Restraint was added at the last minute as part of his plea. Morrill also thought that this charge was initially charged as an attempted crime and somehow the attempted language was dropped. This claim has no merit because the only attempt charge was Attempted Kidnapping and that charge was dismissed as part of the plea agreement.

Morrill also alleged that the key witness in CUMCD-CR-11-1069, Elaina Young, recanted her statement to the police. This claim also has no merit as Young did not change her testimony and was ready, willing and able to testify. (Tr. 14-15.)

Morrill also claims his plea counsel did not discuss the existing charges with him before the plea. This will be discussed below.

Morrill amended his petition to add that his plea was not voluntary because (1) he suffers from mental illness, including a serious anxiety disorder, (2) at the time of his plea he had been incarcerated for 243 days while awaiting a trial, and (3) he was

2

pressured by his plea counsel to enter a plea that he did not want to make. He also points out that he was medicated while being held at the jail. This claim will be discussed below.

At the hearing on his petition on November 4, 2013, Petitioner presented the transcript of the plea proceedings, the testimony of a friend Robert Ledoux, and his own testimony. The State presented the testimony of plea counsel.

## EVIDENCE AT PCR HEARING

At the PCR hearing, petitioner testified that plea counsel did not discuss the charges, the alternatives and the consequences. According to Morrill, plea counsel only discussed the nolo plea to terrorizing, but when he got into court, criminal restraint was added. When he tried to talk to plea counsel about this charge, plea counsel responded, "You want to get out of jail, don't you." Petitioner had been in jail 248 days at the time of the plea and, according to Morrill, he had "about one-half a minute to make up his mind" about accepting the plea deal. He admits that he learned from his plea counsel approximately two weeks before his plea that he was being charged with terrorizing and they discussed what would happen to the other charges if he pled to terrorizing. He claims did not learn until the day of the plea that the other charges would not be dismissed.

The case was on the trial list to pick a jury on the day of the plea. For several days before the day of the plea, Morrill refused to speak with plea counsel. This was part of a pattern. Counsel was turned away three times. Eventually, petitioner agreed to speak with plea counsel. Morrill was angry and confrontational. He had a good grasp of the issues but was very difficult to communicate with. He was not able to focus on what plea

3

counsel was trying to get him to focus on. Plea counsel admits that at some point earlier in representing Morrill he may have said he would try to get all three of the other charges dismissed, but the prosecutor would not consider dismissal of the charges in the indictment. The prosecutor wanted 5 years even before the terrorizing charge arose. Morrill wanted to talk about the discovery materials and his belief that someone had altered the discovery. Plea counsel read the discovery that Morrill complained about; it was material produced pursuant to the Clifford order and it contained nothing that would benefit Morrill's case. Nothing in the discovery had been altered.

According to plea counsel, Morrill always claimed he was 100% innocent, but when one assessed the pragmatic aspects of the case, he had already been in jail for eight months and Morrill wanted out of jail. There was a big down side if Morrill lost at trial. Morrill was making his decision based on getting out of jail. Plea counsel spoke with Morrill for about one-half hour on the day of the plea and did tell Morrill that if he takes this plea he "would get out of jail today."

During plea negotiations, counsel discussed with the prosecutor the conduct and the amount of time involved. He also discussed the case with other attorneys about the minimum sentence because Morrill said he never grabbed the victim. The prosecutor pointed out the statute required that he "entice" her and Morrill enticed her when he offered to show the child puppies, bunnies or candy. Plea counsel spoke with Morrill's friend Robert Ledoux, who testified that plea counsel said Morrill was looking at a lot of time if he went to trial and was convicted, and that if he wanted to get out "today", he had to accept this plea. Plea counsel and Morrill discussed a nolo plea because Morrill did not want to admit to the charge but he wanted to get out of jail.

4

The state never offered to dismiss the three charges in the indictment because this was a high profile case and Elaina Young, one of the witnesses, received a commendation for her efforts to protect the child victim in this case. The prosecutor testified that Elaina Young never recanted or changed her testimony and was available for trial. Before the terrorizing charge came along, the prosecutor offered 5 years on criminal restraint with all but two and one-half years suspended, two years of probation and he would dismiss the kidnapping charge. Then he offered five years with all but a four-year cap or five years with all but three years suspended. For plea counsel, the negotiations concerning the indictment came down to pleading to criminal restraint and focus on getting Morrill out of jail. The prosecutor always focused on criminal restraint and he was never going to dismiss that charge. He would have gone to trial before he would dismiss the criminal restraint charge. Then there was the terrorizing charge added to the mix.

There was also evidence at the PCR hearing concerning Morrill's complaint that his plea counsel and an earlier counsel failed to discuss the problems that Morrill saw with the indictment. Count 2 of the indictment charged Criminal Restraint in violation of 17-A M.R.S.A. § 302(1)(A)(4) and then recited the following language:

> That on or about and between January 16, 2011 and February 16, 2011 in Westbrook, Cumberland County, Maine, STEVEN MORRILL did, knowing he had no legal right to do so, intentionally or knowingly take, retain or entice a minor whose date of birth is 10/12/05 and who was in fact less than eight years of age, *from the custody of his parent, guardian or other lawful custodian, with the intent to hold the minor permanently for a prolonged period.*

Subsection 302(1)(A)(4) makes it a crime to knowingly take, retain or entice a minor who is less than 8 years old; this subsection does not require that the minor be held permanently for a prolonged period. Subsection 302(1)(A)(3), that was not charged,

5

requires that the minor be held for a prolonged period of time. According to Morrill, the allegations in the indictment did not satisfy the elements of the statute. Morrill thought he knew what the State needed to prove and he believed that the State could not meet its burden of proving that Morrill held the minor for a prolonged period because he only walked the five-year old victim a short distance down the street for a brief period of time. According to plea counsel, however, Morrill's admission gave the prosecution a stronger place to negotiate from in the plea negotiations since the prosecution could meet its burden by proving "entice". Morrill did not deny being there and talking to the child. He admitted "shaking hands with the child" and being in the vicinity and "walking by there on a daily basis." The child's statements included allegations that Morrill offered her a puppy, bunny or candy.

At the plea hearing, the plea judge engaged Morrill in a lengthy and thorough Rule 11 colloquy as part of the felony plea to the charges in both cases. The court explained the defendant's right to a grand jury and to waive indictment and proceed on the information charging terrorizing. The prosecutor clarified that the information had been corrected by crossing out six words. The judge inquired whether Morrill had enough time to go over the charges in both docket numbers with plea counsel, to which Morrill responded, "Yes." (Tr. 6.) The judge inquired of Morrill what his plea was to Count Two of the indictment and to the single charge of terrorizing in the information. Morrill responded, "Nolo, your Honor." (Tr. 7.) The plea judge explained to Morrill what the consequences are of pleading nolo contendere, and inquired if Morrill understood this. Morrill again responded, "Yes, Your Honor." (Tr. 8.)

6

The plea judge explained to Morrill the elements of both charges, including that for criminal restraint, "The State would have to show that between the dates of the 16th of January and February 16th of this year in Westbrook that you knew that you had no legal right to take, retain or entice a minor child. So that means that they would have to show that you were aware that it was practically certain that you didn't have any legal right to – to take, retain or entice a minor child. That means somebody under the age of eighteen." Morrill responded, "Right" when asked by the court if he understood that? (Tr. 8.) The plea judge further inquired, "And they would have to show that, at that time, you were either aware that it was practically certain or that it was your conscious purpose to take, retain or entice a minor child, who was less that eight years of age, from the custody of her parent. So do you understand that?" Morrill again responded, "Yes." (Tr. 9.) Finally, with respect to the criminal restraint charge, the plea judge explained, "And they would also have to show that you had a conscious purpose to hold the minor permanently or for a prolonged period of time. So do you understand that?" Morrill again responded, "Yes." (Tr. 9.)

When the plea judge inquired of the terrorizing charge and having two prior convictions for assault, Morrill responded, "That isn't correct. I have, probably, a couple of others but that what the State handed – (indiscernible) – I think I have two convictions for assault. I'm not sure . . . In discovery, I didn't receive all of my past charges." (Tr. 10.) Morrill responded that he understood that the State would have to show that there were at least two prior convictions for assault. (Tr. 10.) The plea judge then reviewed with Morrill the jury trial rights that he was giving up by pleading nolo contendere. Morrill responded that he understood each of the rights he was giving up. (Tr. 10-13.)

7

When asked by the plea judge, whether his pleas to these two charges were made voluntarily and of his own free will and free choice, Morrill responded, "Yes, Your Honor." (Tr. 13.) Morrill also stated that no one forced or threatened him to plead nolo contendere to these charges. (Tr. 14.)

The prosecutor next recited the evidence to both charges, including the fact that the victim in the criminal restraint charge made inconsistent statements about what the defendant stated to her and that the person who reported the terrorizing statements was a person in jail.

When the court inquired whether the prosecutor's recitation was consistent with discovery, plea counsel responded, "Yes, it is, Your Honor, but I would add that it leaves out quire a bit that left us with a highly defensible case and – for each of the two cases and that's why we're having the nolo plea – pleas – in the nature of an [Alford] plea. . . He's not admitting to any of this conduct. It's a highly defensible case, Judge, but he wishes to enjoy the benefit of the bargainings that were offered in this case." (Tr. 17.) When the judge indicated he understood, plea counsel continued, "We just wanted to indicate, Judge, that part of the discovery indicated in the final statements that [the prosecutor] gave, there's also an interview by the Spurwink social worker, in which the child said that he never offered her anything. He never asked to take her anywhere. So there are inconsistent statements throughout the case." (Tr. 17.) The prosecutor agreed this was true and that is why they came up with the negotiation. Plea counsel explained, "She directly said that – he directly – she directly said the child represented. He did not grab her . . . ." (Tr. 17.)

8

When the plea judge inquired of Morrill whether he had enough time "to speak about all these points in the discovery with [plea counsel]", Morrill responded, "Yes, Your Honor." (Tr. 18.) The plea judge explained to Morrill, that plea counsel "just laid out, in some detail, as to what those inconsistencies might be in the [discovery]," Morrill interrupted the judge to say, "I want it down on record, yes, Your Honor." (Tr. 18.)

When the plea judge inquired whether there was anything Mr. Morrill would like to say, Morrill responded, "I'd like to also have it known on record that the terrorizing charge was made by a mentally ill inmate. And it was written by a detective of the Westbrook Police Department and not by the person himself. But I'll go along with what the statement is written, and some of it was deleted earlier . . . It was written by a detective of the Westbrook Police Department. It wasn't written by an inmate at the Cumberland County Jail, who suffers from severe mental health issues . . . And I want that to be on the record because – but I am pleading nolo to that charge though." (Tr. 20.)

## DISCUSSION

To determine whether Morrill received constitutionally ineffective assistance of counsel, this court must examine:

> [F]irst, whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney; and second, whether any such ineffective representation likely deprived the defendant of an otherwise available substantial ground of defense.

*Alexandre v. State*, 2007 ME 106, ¶ 43, 927 A.2d 1153, quoting *Aldus v. State*, 2000 ME 47, ¶ 12, 748 A.2d 463. "[T]he federal and state guarantees are virtually identical." *McGowan v. State*, 2006 ME 16, ¶ 12, 894 A.2d 493.[1] "The burden is on the defendant

---

[1] The test, as articulated by the United States Supreme Court is:

9

to prove both prongs." *Id.* Generally, the court "begin[s] with the second prong regarding prejudice because if it is determined that there was no prejudice, there is no need to address the first prong regarding whether counsel's performance was deficient." *Francis v. State*, 2007 ME 148, ¶ 4, 938 A.2d 149.

The purpose of the constitutional requirement of effective counsel "in the context of a conviction based on a guilty plea, is to ensure that the advice of counsel is within the realm of an ordinary competent attorney because the voluntariness of the plea hinges upon whether the advice is that of an ordinary competent attorney." *Aldus*, 2000 ME 47, ¶15, 748 A.2d 463 (citing *Hill v. Lockhart*, 474 U.S. 52, 56-67 (1985)). The inquiry is "whether the plea proceeding produced a just result which is the 'knowing and voluntary entry of a guilty plea by a guilty party.'" *Id.* (quoting *Laferriere*, 1997 ME 169, ¶11, 697 A.2d 1301).

Petitioner emphasizes in his PCR closing argument that plea counsel failed to comply with M.R.Prof.C. 1.14 that requires an attorney representing a client with diminished capacity to take reasonably necessary protective action. Such steps were taken. Morrill had a competency and criminal responsibility evaluation. Morrill was found competent. There is no evidence to show that Rule 1.14 applies to Morrill and his status at the time of the plea. Morrill's claim on this point has no merit. A competency evaluation during his incarceration concluded he was competent to stand trial. There was

---

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

10

nothing offered at the PCR hearing to contradict that finding of competency or to substantiate a claim of involuntariness. There is nothing on the Plea Transcript to suggest that Morrill did not make a knowing, willing and intelligent plea. At most there was evidence that Morrill had a mental illness, was taking medications, had been in jail for a long time awaiting trial and he was found competent. Morrill wanted to get out of jail and was driven by that desire when he was offered a plea deal that would result in his release the day of his plea. There is no evidence to support the claim that he was a client with a diminished capacity as that term is intended in M.R.Prof.C. 1.14. Moreover, the plea transcript discloses a defendant who understood fully what he was doing when he entered a nolo plea and he was fully engaged in creating a record during the plea. (Tr. 18-20.)

A Maine lawyer is required to provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. M.R.Prof.C. 1.1. Rule 1.1 (5) sets forth the requirements for thoroughness and preparation:

> Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation.

Plea counsel testified that he did not agree that Morrill was competent but the forensic evaluation found him competent. Plea counsel did not agree with Morrill's focus on getting out of jail. Plea counsel was trying to get all three charges in the indictment dismissed, but that was never part of the State's offer. The prosecutor wanted five years incarceration after trial. Plea counsel spoke with Morrill and his friend about the possibility of a plea, but eventually the petitioner shut down and refused to speak with plea counsel.

11

Plea counsel discussed the evidence in the case with Morrill when he was willing to meet with him. Plea counsel also discussed with other attorneys whether the evidence in CR-11-1069 met the statutory definition. The evidence was sufficient for the State to prove "entice" under the statutory definition, given that the evidence showed that Morrill offered the victim candy and perhaps a puppy or bunny. Eventually, plea counsel was able to sit down with Morrill and discuss the cases with him. Morrill calmed down enough to understand and proceed with the criminal matters, and ultimately chose to plead nolo contendere to criminal restraint and terrorizing for a split sentence with time served and probation conditions.

Plea counsel credibly testified that Morrill was very concerned about getting out of jail and wanted to take advantage of the State's time served offer. After his plea to the charges in this matter, Morrill sought to have plea counsel represent him on two of his three motions to revoke probation and never made the claims about his plea counsel that he now makes in his petition for post-conviction review. Petitioner did not file the petition alleging ineffective assistance of counsel until almost a year after the pleas and after the intervention of three probation revocations, two of which he was satisfied to be represented by plea counsel. These facts undermine petitioner's argument that his plea counsel was not competent or that his plea was not knowing or voluntary.

In this case, trial counsel's performance did not fall measurably below the performance that might be expected of an ordinary, fallible attorney. This court concludes that Morrill would have pled nolo, regardless of counsel's recommendations, because he wanted to get out of jail that day. There is not a reasonable probability that, but for counsel's errors, Morrill would not have pled guilty and would have insisted on

12

proceeding otherwise. Morrill's plea represented a voluntary and intelligent choice to get out of jail.

The Supreme Court has held that "the voluntariness of the plea hinges upon whether the advice [of the defendant's attorney] is that of an ordinary competent attorney." *Hill*, 474 U.S. at 56-67. In this case, a competent attorney would have done precisely what plea counsel did here, that is caution the defendant about acting hastily to get out of jail, try to negotiate with the prosecutor to get the charges in the indictment dismissed, consult with other defense attorneys about the case, and in the end negotiate a plea that met his client's objectives. Moreover, plea counsel was well versed in the inconsistencies in the evidence and the risk of substantial prison time if Morrill were convicted. There was no indication on the plea transcript that plea counsel had not done his job or that Morrill was not adequately represented by competent counsel.

Morrill also raises as a competency issue plea counsel's failure to take action with respect to the error in the language of the indictment. Count 2 of the indictment charged Criminal Restraint in violation of 17-A M.R.S.A. § 302(1)(A)(4) as follows:

> That on or about and between January 16, 2011 and February 16, 2011 in Westbrook, Cumberland County, Maine, STEVEN MORRILL did, knowing he had no legal right to do so, intentionally or knowingly take, retain or entice a minor whose date of birth is 10/12/05 and who was in fact less than eight years of age, *from the custody of his parent, guardian or other lawful custodian, with the intent to hold the minor permanently for a prolonged period.*

The indictment was correct in all respects until it erroneously added on the italicized language from subsection 302(1)(A)(3). The indictment charges a violation of 17-A M.R.S.A. § 302(1)(A)(4) and not of 17-A M.R.S.A. § 302(1)(A)(3). Subsection 302(1)(A)(3) was not charged and was not applicable to the evidence in this case. Count 2 as charged added extraneous language that the State was not required to prove for

13

criminal restraint of a five-year old child. The extraneous language about holding the child for a prolonged period of time only applies where the child was 14, 15 or 16 years of age and simply did not apply to the facts of this case.

The discovery put everyone on notice that this crime involved a five-year old child. The reports attached to the initial complaint set forth that the petitioner spoke with a five-year old victim on more than one occasion at the end of her driveway while she waited for the school bus. Petitioner was observed by a neighbor who told him to leave the child alone. Later, he was observed by the girl's mother who told him to leave the girl alone. The neighbor also saw petitioner take the girl's hand and start to lead her away from the bus stop. The police were called. The child gave statements that petitioner told her he had candy and a puppy or a bunny, although her statements were inconsistent over time as pointed out by both plea counsel and Morrill. Petitioner's own statements were that he did contact the girl multiple times at the bus stop and spoke with her, putting him at the scene of the crime and setting forth he had contacted the girl. Given the state of the evidence the extraneous language in the indictment had no impact on the case, and did not provide some type of smoking gun defense that was missed by the defense. Morrill alleges that plea counsel was ineffective in failing to bring the extraneous language to the State's attention, but that language did not change the circumstances of his plea. Morrill knew that he was charged with a felony, plea counsel and the plea judge explained to Morrill that he was pleading to a felony and what the requirements were to prove the crime charged, and Morrill stated that his plea was voluntary and knowingly made. Under all of these circumstances, the court finds that Morrill's plea was made knowingly, intelligently and voluntarily and his plea counsel's

14

performance was that of an ordinary competent attorney and no prejudice resulted from plea counsel's representation.

The entry is: Post-Conviction Petition DENIED.

Date: July 10, 2014

Joyce A. Wheeler, Justice
Maine Superior Court