STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss                          CRIMINAL ACTION
                                        DOCKET NO. CR-14-8229

JOEL HAYDEN,

            Petitioner

v.                                      DECISION AND ORDER
                                        ON PETITION FOR
STATE OF MAINE,                         POST-CONVICTION REVIEW

            Respondent


Before the court is petitioner's petition for post-conviction review filed on November 20, 2014. The petition and 31-page hand-written addendum to the petition were filed on a pro se basis. After counsel was appointed, the petition was not amended. The State filed an answer on August 21, 2015.

BACKGROUND

On January 4, 2013, petitioner was found guilty after jury trial of two counts of intentional or knowing murder. The victims were Renee Sandora, the mother of petitioner's children, and Trevor Mills, petitioner's friend. On February 5, 2013, petitioner was sentenced to two concurrent life sentences. On February 25, 2014, after appeal, the judgments of conviction and the sentences were affirmed. State v. Hayden, 2014 ME 31, 86 A.3d 1221.

Hearing on the petition was held on August 31, 2016. Briefs were filed on September 16, 2016 and October 7, 2016.[1]

_____

[1] After the hearing on the petition for post-conviction review, the parties and the court determined petitioner's brief would be filed on September 16, 2016 and the State's brief would be filed on October 7, 2016. On November 28, 2016, petitioner filed his own motion to reopen the record on the petition for post-conviction review to present the testimony of a forensic toxicologist or forensic psychologist. Because petitioner is represented, the court inquired whether petitioner's counsel would adopt the motion and prosecute it. Counsel declined. The court will not address the motion. The court notes, however, petitioner had ample time to prepare his case. The hearing scheduled for June 30, 2016 was continued to

1

In his petition, the petitioner alleges he received ineffective assistance of counsel at trial as follows:

1. counsel failed to prevent Ja'Kai Hayden from testifying and failed to present evidence to impeach his identification testimony;

2. counsel failed to present testimony of a forensic psychologist on the weapons focus effect with regard to Ja'Kai Hayden;

3. counsel failed to present testimony from a forensic toxicologist about the timing of petitioner's ingesting drugs and the effect of the drugs on petitioner;

4. counsel failed to hire a private investigator to investigate the case;

5. counsel failed to request a polling of the jury after the verdicts were returned;

6. counsel failed to object properly to the court's instruction, failed to object to Brandi Caron's testimony, failed to object to leading questions asked by the State's attorney of Jamie Lee Holmes, failed to prohibit the introduction in evidence of the 911 tapes, failed to object to Dr. Ferenc's testimony, failed to ensure petitioner was present at side bar conferences, failed to object to law enforcement conduct, failed to object to the testimony of John Michaud, and used peremptory challenges improperly during jury selection;

7. counsel failed to present testimony of a forensic psychologist or psychiatrist on the fight or flight syndrome with regard to one victim, Renee Sandora;

8. counsel failed to present the testimony of James Hutchinson;

9. counsel failed to obtain all discovery, including phone text information;

10. no specific allegation;

11. counsel failed to inquire about the failure to test petitioner for gun shot residue and failed to request DNA testing on petitioner's clothes;

12. counsel elicited testimony from Detective Bolton that was inconsistent with the defense theory;

---

August 31, 2016 at petitioner's request to allow additional time to prepare for hearing. Petitioner did, in fact, call a forensic psychologist to testify at the hearing on the petition for post-conviction review.

On January 3, 2017, petitioner's counsel filed a document from petitioner in which petitioner addresses issues he wanted to be brought to the presiding justice's attention. In this document, petitioner responds to the State's argument in its brief. The record on the petition closed on October 7, 2016 when the State filed its brief.

13.    counsel failed to present the testimony of a forensic toxicologist at sentencing about petitioner's level of intoxication at the time of the vehicle accident;

14.    counsel failed to object to the use of leading questions by the State's attorney;

15.    counsel failed to object to the introduction of the 911 tapes;

16.    counsel should not have represented petitioner on appeal because of a conflict of interest;

17.    counsel failed to argue on appeal that petitioner's reckless conduct supported a manslaughter conviction; and

18.    the cumulative effect of counsel's ineffective assistance, prosecutorial misconduct, and court errors, resulted in a violation of petitioner's constitutional rights.

For the following reasons, the petition is denied.

## FINDINGS

Petitioner was represented by two court appointed attorneys after his first attorney withdrew. One trial counsel was admitted to the bar in 1996 and has tried more than twenty homicide cases. The other was admitted in 2002 and has tried twelve homicide cases. Trial counsel divided the labor in representing petitioner. He handled law enforcement witnesses and co-counsel handled civilian witnesses. They divided technical issues, such as DNA, toxicology, and ballistics. They met with petitioner together and, if they met separately, they briefed each other about the meeting. They both met with petitioner at the jail approximately the same number of times.

Trial counsel began representing petitioner seven months after the case began. During this representation, trial counsel had no concern about petitioner's state of mind. He was distrustful and had no faith in the justice system or his previous counsel. Trial counsel gained credibility with petitioner when they prevailed on the motion to suppress. One trial counsel disagreed that petitioner's intelligence was low to average. The other agreed the term "average"

3

was a fair assessment of petitioner's intelligence. Petitioner had a good grasp of English and asked relevant questions.

During plea negotiations, the State agreed not to seek a life sentence if petitioner pleaded. The State's offer was a sentence of 70 years. At age 31, however, petitioner considered the offer a life sentence because with maximum good time, he would be released at age 92 or 93. Trial counsel refused to give petitioner a sentencing range if the State agreed to an open plea. One trial counsel believed this case involved <u>Shortsleeves</u> factors. The other trial counsel believed the range for the sentence to be imposed was fifty to sixty years if sentencing went well and petitioner's son was spared having to testify.

The defense had little to work with; the evidence against petitioner was overwhelming, as the Law Court noted in its decision. <u>See</u> <u>Hayden</u>, 2014 ME 31, ¶ 13, 86 A.3d 1221. There was no alternative suspect and no unaccounted for persons in the house at the scene. The State's evidence included the testimony of petitioner's son, seven year old Ja'Kai Hayden,[2] who saw petitioner shoot the two victims, and two calls to 911. One call was from one of the victims and one from a neighbor, Leslie Foley, to whom Ja'Kai said "he shot, he shot them." (Trial Tr. 81.) Trial counsel filed a motion in limine to exclude the 911 tapes; the motion was denied.

The only viable defense for counsel to pursue was a manslaughter conviction, as opposed to a murder conviction. Trial counsel adopted this approach. There also was no possibility of a not criminally responsible defense, which was not pursued by trial counsel or petitioner's initial counsel.

Petitioner was not in favor of his son, Ja'Kai, testifying but that testimony would have been prevented only by a plea. (Trial Tr. 49-50.) Trial counsel made efforts to prevent the

---

[2] He was eight at the time of trial. (Trial Tr. 53.)

4

testimony but found no basis on which to preclude the testimony. They determined a competency hearing prior to Ja'Kai's testimony would have been futile. (Trial Tr. 53-54.)

Trial counsel cross-examined Ja'Kai carefully. (Trial Tr. 66-72; 73-74.) They did not believe the mistakes in Ja'Kai's identification of petitioner's clothing were significant considering what Ja'Kai had witnessed. There were differences between the testimony of Ja'Kai and a neighbor, Leslie Foley. Ja'Kai testified that petitioner left the scene in a small car. Ms. Foley testified petitioner left in a bigger sedan. (Trial Tr. 58, 78.) Trial counsel did not highlight these discrepancies. Trial counsel were familiar with the weapons focus effect, where a witness focuses on a weapon and not on an adequate identification. Trial counsel did not want to confront and impeach Ja'Kai on inconsistencies and risk alienating the jury.

During his testimony, Ja'Kai was in the witness box facing the jury. The court and the Assistant Attorney General asked Ja'Kai during his testimony to speak into the microphone. (Trial Tr. 60, 64, 67.) Petitioner sat at defense table between his trial counsel. Trial counsel did not consider this arrangement a violation of the right to confront witnesses.

Although trial counsel were aware of petitioner's drug history, the toxicology report did not support the argument that petitioner was out of his mind at the time of the shooting. That defense would have required petitioner's testifying, which he did not want to do. Petitioner closed the door on his testifying early on and did not change his position.[3] Trial counsel discussed with petitioner the pros and cons of petitioner's testifying and that the decision was his. Petitioner knew the defenses, including adequate provocation, he foreclosed by deciding not to testify.

Trial counsel did not consider hiring a toxicologist. At trial, the defense did present the testimony of Stephen Pierce, a chemist at the Maine Health and Environmental Testing Lab in

Augusta, Maine. He testified regarding the drugs in petitioner's system at the time the blood and urine samples were taken, the levels of those drugs, the timing of ingestion, and the effects of the drugs. (Trial Tr. 334, 859-80.) In particular, Mr. Pierce testified that petitioner had ingested a large dose of oxycodone and cocaine hours before he arrived at the emergency department. (Trial Tr. 867-68.) Because of the high dose of oxycodone ingested, petitioner would have been feeling the effects of that drug after ingestion. (Trial Tr. 875.)

The record further reflects evidence regarding petitioner's use of drugs on July 25, 2011, including a report regarding the analysis of petitioner's blood sample. (Trial Tr. 333.) In addition, Judith French, an emergency medical technician, responded to the scene of petitioner's car crash on the day of the murders. She testified that petitioner told her he snorted eighteen Percocet 30s and five bars of Xanax. (Trial Tr. 679-80.) She also testified that petitioner understood her questions and responded appropriately; she had no concerns about petitioner's ability to understand her. (Trial Tr. 680.) Trooper Kevin Rooney testified he heard the petitioner tell the emergency medical technicians that he was a drug addict, takes Xanax and oxys, and was hearing voices. (Trial Tr. 273, 281.) Amber Richards, an attending physician at the Maine Medical Center Emergency Department testified petitioner reported using drugs before admission to the hospital and a substance abuse consult was ordered. (Trial Tr. 899.) His medical record from Southern Maine Medical Center reflected a diagnosis of, among other things, an overdose. Based on this evidence, trial counsel believed the judge would instruct the jury on their requested intoxication defense and they succeeded. (Trial Tr. 1098.)

Licensed forensic psychologist, Nadir Behrem, was called by petitioner as a witness at the hearing on the petition for post-conviction review. (PCR Tr. 24-49.) Based on his training and experience, he is qualified to testify about the long term effect of ingesting drugs on a

---

[3] Petitioner also had a substantial criminal record. See Hayden, 2014 ME 31, ¶ 22, 86 A.3d 1221.

6

person's behavior. Mr. Behrem evaluated petitioner at the Maine State Prison twice. In his report, Mr. Behrem identifies the information he reviewed prior to the evaluations. (Pet'r's Ex. 1.) Petitioner provided to Mr. Behrem very little information about the day of the murders.

Petitioner has a history of using opiates, cocaine, and marijuana over the years. He used all three types of drugs on the days leading up to the car crash and on the day of the crash, including an eight ball of cocaine everyday. Petitioner reported using drugs while driving on July 25, 2011. Mr. Behrem did not know when petitioner might have ingested drugs relative to the time of the shooting.

The effect of this use of cocaine results in behaviors similar to mania, an increase in activity, and paranoid beliefs. The use of cocaine and marijuana, not opiates, is associated with psychotic thinking. Withdrawal from cocaine and opiates results in irritability, difficulty sleeping, trembling, nausea, and vomiting.

Petitioner told Mr. Behrem about previously experiencing psychosis, including hearing voices and paranoia, from the use of cocaine. Mr. Behrem was aware that paranoia can result from the use of cocaine but was not sure about hearing voices. Petitioner also told Mr. Behrem petitioner would black out from using too much Xanax, which Mr. Behrem was unsure could happen. Petitioner told Mr. Behrem that petitioner became suspicious and paranoid from the use of marijuana, which petitioner used on the date of the murders.

The use of opiates has a more calming effect, the opposite effect from that of cocaine. Mr. Behrem did not know the result of the interaction of opiates and cocaine.

On the date of the murders, petitioner appeared manic to others and sounded frantic. He accused people of cheating on him with Ms. Sandora. Petitioner reported to a Maine State Police

Trooper hearing voices shortly after the crash. Stephen Pierce's toxicology report for petitioner showed evidence of marijuana, cocaine, and a substance found in benzodiazepine.

Based on petitioner's statements, Mr. Behrem concluded that petitioner sometimes was paranoid with the use of drugs and he was distrustful of others but more so when using drugs. Mr. Behrem reached no conclusions regarding petitioner's actual level of intoxication on the day of the murders, except for what he reviewed. (PCR Tr. 37.) Mr. Behrem agreed that petitioner's use of drugs negatively affected his judgment. (PCR Tr. 44.)

Mr. Behrem concluded that based on petitioner's conduct during the high speed chase, including his effort to get away, his throwing something from the window, and his desire not to go to jail, petitioner's judgment did not appear to be impaired to the point where he did not know the wrongfulness of his conduct. (PCR Tr. 43, 44-45.) Further, petitioner did not have a mental disorder on July 24-25, 2011. (PCR Tr. 44.)

Armand Lucier, a private investigator, was hired for this case. (PCR Tr. 63.) Trial counsel did not believe the investigator prepared a report. Trial counsel did not know whether he interviewed James Hutchinson.

Petitioner was in the courtroom for jury selection and trial and was in chambers for individual voir dire. (Jury Selection Tr. 23-24.) It is not trial counsel's practice to have a client present for sidebar conferences. Trial counsel represented to the court that petitioner did not have to be present at sidebar conferences. (Trial Tr. 49-50.) Two jurors were excluded because of language barriers. (Jury Selection Tr. 169, 172.) Petitioner asked trial counsel to strike the only individual of color in the jury pool.

Trial counsel did not object to the State's leading question to Jamie Holmes about why she was reluctant to come forward in order to preclude prejudicial testimony. After conference

with counsel, leading questions were agreed to in order to avoid prejudicial testimony. (Trial Tr. 781-84.) Ms. Holmes testified at the hearing on the petition for post-conviction review that she was told by law enforcement that if she did not appear at trial and at the hearing on the petition, she would go to jail and lose her children. Trial counsel determined not to call Johnnie Holmes and James Hutchinson because of the potential for damaging testimony that outweighed any helpful testimony. (PCR Tr. 160-63.)

Because of a multi-day motion to suppress hearing, pretrial publicity, and threats from supporters of one victim, trial counsel discussed with petitioner a change of venue. The issue was discussed with the judge, including a possible change of venue to Penobscot County. Trial counsel filed a motion to change venue, which was denied and the case remained in Cumberland County. Trial counsel believed Cumberland County offered a greater likelihood of seating members of a minority on the jury and petitioner's best interests were served by remaining in Cumberland.

Trial counsel received tapes of interviews of witnesses. The tapes were not given to petitioner because he had no way to play them. Trial counsel visited petitioner with a computer and transcripts were also provided. Trial counsel did not dispute that no request for law enforcement notes was made. (Trial Tr. 259-60.)

Trial counsel did not seek to compare blood on petitioner's shorts with Officer Bolton's DNA. (Trial Tr. 965.) The cuttings revealed the DNA of one of the victims, Renee Sandora, and petitioner. No benefit would have been gained by testing for Officer Bolton's DNA. There was no unknown DNA on the cuttings. (Trial Tr. 526-530.)

Petitioner requested that trial counsel represent him on appeal. Trial counsel spoke to petitioner several times prior to filing the brief. Telephone calls are not terminated with clients at the Warren facility as they are at the Cumberland County Jail, according to trial counsel.

CONCLUSIONS OF LAW

"To prevail in a post-conviction proceeding based on an alleged constitutional deprivation of counsel, the petitioner must demonstrate two points: first, 'that counsel's representation fell below an objective standard of reasonableness,' and second, that 'errors of counsel . . . actually had an adverse effect on the defense.'" Theriault v. State, 2015 ME 137, ¶ 14, 125 A.3d 1163 (quoting Strickland v. Washington, 466 U.S. 668, 693 (1984)). When proved, the elements of an ineffective assistance case "constitute a 'showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Theriault, 2015 ME 137, ¶ 14, 125 A.3d 1163 (quoting Strickland, 466 U.S. at 687).

For trial issues, the petitioner must demonstrate that there has been serious incompetency, inefficiency or inattention of counsel that falls below that which might be expected from an ordinary fallible attorney and that the ineffective representation by counsel has likely deprived the defendant of an otherwise available substantial ground of defense. See State v. Brewer, 1997 ME 177, ¶¶ 15-17, 699 A.2d 1139. "[T]he test is applied on a case-by-case basis, and evaluations of ineffective assistance of counsel claims are 'guided by the overall justness and fairness of the proceeding.'" McGowan v. State, 2006 ME 16, ¶ 12, 894 A.2d 493 (quoting Aldus v. State, 2000 ME 47, ¶¶ 14-15, 748 A.2d 463).

When "counsel's ineffectiveness amounts to the 'constructive denial of the assistance of counsel,' prejudice is 'legally presumed' and need not be affirmatively proved." Theriault, 2015 ME 137, ¶ 17, 125 A.3d 1163 (quoting Strickland, 466 U.S. at 692). In cases in which prejudice

cannot be presumed, "the actual prejudice that a petitioner must prove 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Theriault, 2015 ME 137, ¶ 19, 125 A.3d 1163 (quoting Strickland, 466 U.S. at 694).

"Defense counsel owes a duty to the client to conduct a reasonable investigation." Lagassee v. State, 655 A.2d 328, 329 (Me. 1995). That duty "includes a duty to interview witnesses who have information relevant to the case." Doucette v. State, 463 A.2d 741, 745 (Me. 1983).

Substantially heightened deference is accorded in reviewing strategic or tactical decisions by trial counsel. See Levesque v. State, 664 A.2d 849, 851 (Me. 1995); see also Strickland, 466 U.S. at 689; True v. State, 457 A.2d 793, 796 (Me. 1983). The question "is whether the strategy has been shown to be manifestly unreasonable." Id. Failure of trial counsel to call witnesses based on concern for potential damaging testimony constitutes reasonable trial strategy. Twist v. State, 617 A.2d 548, 551 (Me. 1992).

Specific Conclusions[4]

Ground 1: counsel failed to prevent Ja'Kai from testifying and from presenting evidence to impeach Ja'Kai's identification testimony.

Although they made petitioner's objections to his son's testifying known to the court, trial counsel had no basis on which to move to exclude Ja'Kai's testimony. The decision not to impeach the testimony of an eight-year-old child, who had witnessed his father shoot his mother

---

[4] Additional issues were raised at the hearing on the petition for post-conviction review. Although petitioner alleged plea offers were not communicated, he testified at the hearing on the petition for post-conviction review that he was not interested in pleading guilty. (PCR Tr. 125.) With regard to his not testifying at trial, the presiding justice discussed with petitioner on the record at trial his decision not to testify. (PCR Tr. 111-13; 124-27; Trial Tr. 1049-51.)

and a family friend, was not unreasonable. Further, the theory of the defense was to obtain a manslaughter conviction and not that the wrong man was on trial. Finally, petitioner's allegation that the State improperly coached Ja'Kai is based on petitioner's theory of what Ja'Kai and a child of his age would say. This issue was not addressed at the hearing on the petition for post-conviction review. Petitioner testified at the hearing on the petition for post-conviction review about his concern that Ja'Kai testified as he did because he was given treats.

Ground 2: counsel failed to present testimony of a forensic psychologist on the weapons focus effect.

Trial counsel determined not to pursue this avenue of impeachment of Ja'Kai. This issue was not addressed further at the hearing on the petition for post-conviction review and no evidence regarding the weapons focus effect was offered other than a brief description from trial counsel. (PCR Tr. 151.)

Ground 3: counsel failed to present testimony from a forensic toxicologist about the timing of petitioner's ingesting drugs.

No testimony or other evidence from a toxicologist was presented at the hearing on the petition for post-conviction review. Defense witness Stephen Pierce, the lab report, and other witnesses addressed the drugs in petitioner's system, including petitioner's statements about his ingestion of drugs.

Even post-verdict, petitioner provided very little information about the day of the murders to petitioner's witness, Mr. Behrem. It is unlikely petitioner would have provided information to a toxicologist before trial. Assuming he would have provided information, a toxicologist likely would not have been allowed to testify about those statements. The petitioner had no intention of testifying.

Further, petitioner's expert at the hearing on the petition for post-conviction review concluded that on the day of the murders, petitioner did not appear to be impaired to the point where he did not know the wrongfulness of his conduct and petitioner did not have a mental disorder on July 24-25, 2011. Emergency medical technician, Judith French, testified petitioner understood her questions, responded appropriately, and she had no concerns about his understanding her.

Ground 4: counsel failed to hire a private investigator.

Trial counsel did hire a private investigator. No evidence about what a private investigator should have investigated or discovered was presented at the hearing on the petition for post-conviction review.

Ground 5: counsel failed to request a polling of the jury after the verdicts were returned.

No evidence regarding what a polling may have revealed was presented at the hearing on the petition for post-conviction review.

Ground 6: counsel failed to object properly.

The majority of petitioner's allegations in ground 6, regarding jury instructions, Brandi Caron's[5] qualifications, leading questions asked of Jeffrey Love, Dr. Ferenc's qualifications, law enforcement reports, and the composition of the jury panel, were not addressed at the hearing on the petition for post-conviction review.[6] The testimony of John Michaud was mentioned only very briefly. (PCR Tr. 88-89; 99-100.) Leading questions with regard to the testimony of Jamie Holmes were permitted to avoid prejudicial testimony. Petitioner's allegations regarding sidebar conferences and jury selection are not supported by the record. The court accepts trial counsel's

---

[5] Brandi Caron was only briefly mentioned at the hearing on the petition for post-conviction review. (PCR Tr. 75; 152.)

[6] Petitioner testified at the hearing on the petition for post-conviction review about a chain of custody objection. (PCR Tr. 129-30.)

representation to the court that petitioner did not need to participate in sidebar conferences. No evidence regarding what petitioner's presence may have accomplished was presented at the hearing on the petition for post-conviction review. Excluding jurors because of a language barrier is not unreasonable.

> Ground 7: counsel failed to present testimony of a forensic psychologist or psychiatrist on the fight or flight syndrome with regard to Renee Sandora.

This issue was not addressed at the hearing on the petition for post-conviction review.

> Ground 8: counsel failed to present the testimony of James Hutchinson.

Trial counsel's decision not to present Mr. Hutchinson's testimony was not unreasonable. Mr. Hutchinson did not testify at the hearing on the petition for post-conviction review. Trial counsel recalled that the value of Mr. Hutchinson's testimony that he saw only a brown minivan pass by his house, which was not the car operated by petitioner, was outweighed by his damaging testimony that he heard gunshots, heard a young girl saying something, and then heard additional gunshots.

> Ground 9: counsel failed to obtain all discovery.

No evidence about law enforcement notes was presented at the hearing on the petition for post-conviction review.

> Ground 10: no specific allegation.

> Ground 11: counsel failed to inquire about the failure to test petitioner for gun shot residue and failed to request DNA testing on petitioner's clothes.

The DNA testing showed that the blood of petitioner and one of the victims was on petitioner's clothing. Whether Detective Bolton's blood could have been on petitioner's clothing did not matter.[7] Accordingly, trial counsel's decision not to request further DNA analysis on

---

[7] Petitioner also testified about his speculation that the shorts were "possibly" cross-contaminated. (PCR Tr. 119-20.)

14

petitioner's clothes was not unreasonable. The issue of gun shot residue was not addressed at the hearing on the petition for post-conviction review.

Ground 12: counsel elicited testimony from Detective Bolton that was inconsistent with the defense theory.

Detective Bolton's testimony was not inconsistent with the defense theory of the case. See Ground 11.

Ground 13: counsel failed to present the testimony of a forensic toxicologist at sentencing about petitioner's level of intoxication.

No testimony or other evidence from a toxicologist was presented at the hearing on the petition for post-conviction review. Mr. Behrem testified as discussed above at the hearing on the petition for post-conviction review. At trial, defense witness Stephen Pierce and the State's exhibit regarding the blood sample analysis addressed the drugs in petitioner's system at the time the samples were taken.

The level of petitioner's intoxication would not have been considered a mitigating factor at sentencing. See State v. Hewey, 622 A.2d 1151 (Me. 1993); State v. Waterman, 2010 ME 45, ¶ 49, 995 A.2d 243 (treated as an aggravating factor when it led to the commission of the crime); State v. Lilley, 624 A.2d 935, 936 (Me. 1993) (unsuccessful efforts to treat an addiction viewed as an aggravating factor).

Ground 14: counsel allowed the State's attorney to use leading questions.

Petitioner cites no specific part of the 1076-page trial transcript for this allegation. Instead, he states the "record is replete" with trial counsel's allowing leading questions by the State. The record does not support this argument. This issue was not addressed at the hearing on the petition for post-conviction review.

Ground 15: counsel failed to object to prejudicial evidence.

Petitioner argues there were other ways for the jury to hear relevant evidence other than hearing the 911 tapes. Trial counsel tried unsuccessfully to exclude the tapes in their motion in limine. (Trial Tr. 41.)

Ground 16: counsel should not have represented petitioner on appeal.

No evidence was presented regarding what a different attorney may have done differently or better on appeal. When asked, petitioner had no idea what issues should have been raised on appeal. (PCR Tr. 115.)

Ground 17: counsel should have argued on appeal that petitioner's reckless conduct supported a manslaughter conviction.

This argument was made unsuccessfully on appeal. Hayden, 2014 ME 31, ¶¶ 14-16, 86 A.3d 1221.

Ground 18: the cumulative effect of counsel's ineffective assistance, prosecutorial misconduct, and court errors, resulted in a violation of petitioner's constitutional rights.

The court's instruction on evidence admitted for a limited purpose was not error. (Trial Tr. 1086-87.) No particular instances of prosecutorial misconduct are identified. This issue was not addressed at the hearing on the petition for post-conviction review. Trial counsel's representation was effective.

CONCLUSION

Petitioner has the burden of proof at the hearing on a petition for post-conviction review. McGowan, 2006 ME 16, ¶ 12, 894 A.2d 493. The fact that allegations are included in the petition or the post-trial memorandum does not constitute proof.[8] Petitioner has not proved that trial counsel's "'representation fell below an objective standard of reasonableness'" and that the

"'errors of counsel . . . actually had an adverse effect on the defense.'" <u>Theriault</u>, 2015 ME 137, ¶ 14, 125 A.3d 1163 (quoting <u>Strickland</u>, 466 U.S. at 693). As the Law Court concluded, "the evidence against Hayden, including evidence that he acted intentionally or knowingly, was overwhelming." <u>Hayden</u>, 2014 ME 31, ¶ 13, 86 A.3d 1221.

The entry is

The Petition for Post-Conviction Review is DENIED.

Date: January 19, 2017

Nancy Mills
Justice, Superior Court

---

[8] For example, in the post-trial memo, with regard to grounds sixteen, seventeen, and eighteen of the petition, petitioner states, "Petitioner's Petition sets out the basis for relief on these grounds." (Pet'r's Mem. 14; <u>see</u> PCR Tr.116.)