skip 9/12/18

**STATE OF MAINE**
**KENNEBEC, ss**

DISTRICT COURT
LOCATION: AUGUSTA
DOCKET NO. CR-2016-2722

**FRANKLIN F. ARBOUR,**
    **Petitioner**

    **v.**

**STATE OF MAINE,**
    **Respondent**

**DECISION AND ORDER**

Before this court is Franklin F. Arbour's (hereinafter "Petitioner") Petition for Post-Conviction Review. Petitioner is represented by Attorney James Mason and the State is represented by Assistant Attorney General Katie Sibley. After hearing, and fully considering arguments of counsel, this court finds and concludes as follows:

## PROCEDURAL HISTORY

1. On September 19, 2014, Petitioner was charged with eight criminal counts outlined as followed: Count 1: Aggravated Trafficking in Scheduled Drugs, Class A; Count 2: Aggravated Trafficking in Scheduled Drugs, Class A; Count 3: Aggravated Trafficking in Scheduled Drugs, Class A; Count 4: Unlawful Trafficking of Scheduled Drugs, Class B; Count 5: Unlawful Trafficking of Scheduled Drugs, Class C; Count 6: Aggravated Marijuana Cultivation, Class B; Count 7: Unlawful Possession of Scheduled Drugs, Class B; Count 8: Unlawful Possession of Scheduled Drugs, Class C. The Grand Jury indicted the Petitioner on all eight counts charged on November 14, 2014. Petitioner was convicted and is currently incarcerated. *See* KENCD-CR-2014-958.

2. On October 28, 2016, Petitioner executed a *pro se* Petition for Post-Conviction Review which was received by the court on November 1, 2016. The Petition was assigned for review on December 2, 2016 by Justice William Anderson, filed with this court on December 5, 2016, and James Mason, Esq. was appointed to the case on December 6, 2016. The undersigned was assigned this matter on January 3, 2017. Mr. Mason filed an Amended Petition for Post-Conviction Review on February 23, 2017 and a hearing was held over the course of two days on March 15, 2018 and March 20, 2018. Counsel requested additional time to request a transcript of the two-day post-conviction hearing and to submit written closing arguments. Both attorneys for the Petitioner and the State submitted their closing arguments by June 20, 2018.

1

## BACKGROUND AND FACTS

3. Luann Calcagni, Esq. was appointed as defense counsel for Petitioner in October 2014.

4. Ms. Calcagni has been practicing law since 1997 and focuses primarily on civil, criminal, and some appeal work. (Post-Conviction Review Hearing (hereinafter "PCRH") Tr. Vol. I. at 5.) Ms. Calcagni practiced in both Maine and Massachusetts and at the time of Petitioner's criminal case had an office located in Augusta, Maine. (*Id.* at 6.) Currently, Ms. Calcagni predominately practices in Massachusetts and no longer has an office in Maine. (*Id.* at 6-7.)

5. Throughout the pendency of the case, Ms. Calcagni brought several motions on behalf of Petitioner including multiple Motions for Discovery (the final discovery request was made on August 5, 2014), Motions to Amend and Review Bail, Motions to Suppress Evidence and Statements, a Motion for Relief from Joinder, Motion in Support of Franks Hearing, a Motion for Further Written Findings and Conclusions, Motions in Limine, and a Motion for Judgment of Acquittal or New Trial.

6. There were two hearings in this matter regarding Motions to Suppress brought by Ms. Calcagni with the first heard on May 26, 2015 and the second heard on July 23, 2015. After hearings on both dates, all motions were denied.

7. A jury trial was scheduled in this matter and took place over the course of two days, starting on August 24, 2015 and finishing on August 25, 2015. Petitioner was found guilty and a sentencing hearing was scheduled for October 14, 2015. Petitioner was sentenced to 25 years at the Maine Department of Corrections, all but 18 years suspended, and 4 years of probation (with lesser charges to be serve concurrently).

8. Ms. Calcagni brought an appeal of the conviction on behalf of Petitioner in January of 2016, which was denied by the Law Court on August 11, 2016. *See State v. Arbour*, 2016 ME 126, 146 A.3d 1106.

9. After the hearing and testimony of both Ms. Calcagni and Petitioner, this court does not find Petitioner to be credible and finds Ms. Calcagni was not ineffective as detailed below.

## DISCUSSION

### I. Standard of Review for Ineffective Assistance of Counsel

10. The Law Court in *Theriault v. State*, 2015 ME 137, 125 A.3d 1163 noted that *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) is the "seminal case" that establishes the standards controlling the

disposition of claims of ineffective assistance of counsel. *See also Manley v. State*, 2015 ME 117, ¶ 12, 123 A.3d 219.

11. The right of an accused to be represented by counsel is "a fundamental component of our criminal justice system guaranteed by the Sixth Amendment of the United States Constitution . . . ." *Laferriere v. State*, 697 A.2d 1301, 1303 (Me. 1997); *see United States v. Cronic*, 466 U.S. 648, 653 (1984). Because of the fundamental role that defense counsel play in ensuring the fairness of the criminal justice system, the right to counsel is the right to the effective assistance of counsel. *McMann v. Richardson*, 387 U.S. 759, 771 n. 14 (1970).

12. The post-conviction court applies a two-prong test in adjudicating a claim for ineffective assistance of counsel. First, the court determines whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney. *McGowan v. State*, 2006 ME 16, ¶ 11, 894 A.2d 493. Second, the court determines whether the attorney's performance likely deprived the defendant of an otherwise available substantial ground of defense or likely affected the outcome of the proceeding. *Id.* ¶ 12 (noting that the federal and state guarantees are virtually the same).

13. *Strickland v. Washington* requires the court to evaluate the totality of the circumstances and notes that there is a strong presumption that trial strategy and tactics fall within the wide range of reasonable professional assistance. Accordingly, judicial scrutiny of trial counsel's performance is supposed to be highly deferential. 466 U.S. at 689; *Theriault*, 2015 ME 137, ¶ 38, 125 A.3d 1163 (*Alexander, J.* dissenting).

14. To meet his burden, the Petitioner must affirmatively show prejudice. *Strickland*, 466 U.S. at 693; *McGowan*, 2006 ME 16, ¶ 11, 894 A.2d 493. When dealing with prejudice, the "petitioner must prove that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning that the 'ineffective assistance of counsel rose to the level of compromising the reliability of the conviction and undermining confidence in it.'" *Philbrook v. State*, 2017 ME 162, ¶ 6, 167 A.3d 1266 (quoting *Theriault*, 2015 ME 137, ¶¶ 19, 25, 125 A.3d 1163) (internal punctuation omitted).

15. The Law Court first had the opportunity to apply the *Strickland* test to an ineffective assistance of counsel claim arising out of a plea proceeding in *Laferriere v. State,* 1997 ME 169, 697 A.2d 1301. There the Law Court determined that the same two-part standard of *Strickland* is applicable to ineffective assistance claims arising out of the plea process. *Id.*

16. "When a defendant alleges that the rejection of a proposed plea resulted from the ineffectiveness of counsel, the defendant must show that, but for the ineffective assistance . . . there is a 'reasonable probability' that

- The plea offer would have been presented to the court, meaning that the defendant would have accepted the plea and the prosecution would not have withdrawn it for other reasons;

- The court would have accepted the terms presented; and

- The terms of the offer would have provided for a less severe conviction or sentence than the conviction or sentence ultimately reached." *Philbrook*, 2017 ME 162, ¶ 11, 167 A.3d 1266.

"Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Aldus v. State*, 2000 ME 47, ¶ 13, 748 A.2d 463.

17. The Law Court in post-conviction review matters has regularly instructed trial courts to be cautious in their evaluation of trial counsel's performance in order to avoid reaching a result based solely on hindsight. The Law Court has repeatedly held that it will accord trial counsel great deference in their tactical decisions and these decisions are reviewable solely for "manifest unreasonableness." *Pierce v. State*, 463 A.2d 756, 759 (Me. 1983). Manifest unreasonableness occurs when counsel's performance deprives the defendant of a substantial ground of defense. *Twist v. State*, 617 A.2d 548, 550 (Me. 1992).

## II. Review of Electronic Discovery

18. Petitioner claims that Ms. Calcagni failed to provide him with electronic discovery as necessary for a proper investigation to have been effectuated. (Pet'r Closing Argument at 8.) This court finds that claim unpersuasive.

19. Ms. Calcagni testified that while she did not have a "distinct recollection" of reviewing the electronic discovery with Petitioner it is her normal practice to go over all forms of discovery with any client. (PCRH Tr. Vol. I. at 23.) Specifically, when questioned about her discovery practices she stated "I would have either gone over [the discovery] with him at the jail, sent him copies or both." (*Id.*) When further questioned about her practices with electronic discovery, Ms. Calcagni stated that her normal practice is to bring her laptop, with a disc drive, to the jail in order to review electronic discovery with an incarcerated client. (*Id.*) Ms. Calcagni further stated that she always brings over her computer to review discovery when she has the necessary ability and access to do so. (*Id.* at 24.)

20. Reviewing this under both Law Court and Supreme Court precedent, this court does not find that Ms. Calcagni's actions regarding discovery were seriously

4

incompetent, inefficient, or inattentive "of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney." *McGowan*, 2006 ME 16, ¶¶ 7-11, 894 A.2d 493. As any ordinary fallible attorney, it is understandable that Ms. Calcagni would not have an exact recollection of reviewing discovery with a client three years before in a long, litigated and complicated case. In spite of her lack of exact memory, this court finds Ms. Calcagni's testimony credible when she asserts she believes she did review the discovery with Petitioner. A lack of exact memory for reviewing the discovery does not rise to the level of an ineffective assistance of counsel claim; therefore, the Petitioner has failed to meet his burden regarding this issue.

### III. Statements in Motion to Suppress Hearing

21. Petitioner argues that Ms. Calcagni's performance at the Motion to Suppress Hearing rises to the level of ineffective assistance of counsel. This court disagrees with Petitioner's contention.

22. Petitioner contends that Ms. Calcagni's questioning of Officer Eric dos Santos was ineffective because she failed to focus her questions around Petitioner's legal theory. (Pet'r's Closing Argument at 9.) Petitioner wanted Ms. Calcagni to question Officer Santos about his comments regarding threatening to charge the Petitioner's girlfriend, Angie Sousa, if Petitioner did not return to the premises where the arrest took place. (*Id.*); *see also* (Resp't's Ex. 4.) Petitioner has maintained throughout the entirety of his criminal trial that any statements he made to the police were not voluntary because of his fear for his girlfriend, which was created by Officer Santos' actions. (Pet'r's Closing Argument at 9.) Ms. Calcagni testified before this court her reasoning for not using Petitioner's strategy as follows: "I didn't believe we would gain much traction for pursuing any line of questioning that . . . he was forced to come back to the premises because law enforcement forced Angie to force him." (PCRH Tr. Vol. I. at 43.) Also, Ms. Calcagni testified to her use of a specific legal theory, the *McInnis* argument, and her handling of that as follows:

> "I didn't want to . . . I don't believe to impeach just for the purposes of impeaching, is the best approach. It has to be consistent, fall in with the . . . strategy. So I had given considerable thought to the line of questioning, and I . . . just believe that the under the circumstances we were faced with, that was the best approach." (*Id.* at 132.)

23. Ms. Calcagni's decision to follow a specific line of questioning, and not use Petitioner's legal theory, is based purely on strategy. Under *Strickland*, this court must give high deference to the strategic decisions of trial counsel. *Strickland*, 466 U.S. at 689; *Theriault*, 2015 ME 137, ¶ 38 (*Alexander, J.* dissenting). Ms. Calcagni put in consistent and significant effort in the building of a legal theory in regard to the statements at issue in the Motion to Suppress. This is established through Ms. Calcagni's testimony and her billing statements

showing several hours spent on legal research. *See* (Pet'r's Ex. 6.) While Ms. Calcagni was not successful, Petitioner has failed to show that her performance was seriously incompetent, inefficient, or below what one would expect of an ordinary fallible attorney. *McGowan*, 2006 ME 16, ¶¶ 7-11, 894 A.2d 493. Ms. Calcagni's choice to not base her questions around Petitioner's legal theory was a strategic decision that she made in the best interest of her argument for the benefit of Petitioner. Because this was a strategic decision, Ms. Calcagni was not ineffective in her representation of Petitioner based on her performance at the Motion to Suppress hearing.[1]

## IV. Appeal

24. Petitioner claims that Ms. Calcagni's trial strategy at the Motion to Suppress hearing, as noted above, negatively impacted Petitioner's appeal to the Law Court, which was denied. (Pet'r's Closing Argument at 10.) Ms. Calcagni raised several issues on appeal, with one focus being that the statements from the Motion to Suppress hearing should have been excluded from evidence at trial. (Pet'r's Blue Br. 8-15.) The Law Court was not persuaded by her appeal, which Petitioner links to Ms. Calcagni's refusal to use his trial strategy mentioned earlier. (Pet'r's Closing Argument at 10.) Similar to above, this court is not persuaded by Petitioner's argument regarding Ms. Calcagni's performance on appeal based on her choice of strategy at the Motion to Suppress Hearing. Again, following precedent of *Strickland*, because this was a strategic decision, and her performance in making that decision is not concerning, Ms. Calcagni was not ineffective in her representation of Petitioner at his appeal.

## V. Plea Negotiations

25. Upon meeting Petitioner, he made it clear to Ms. Calcagni that he was only willing to accept a plea deal if he received less time to serve then he had served in prior sentences. (PCRH Tr. Vol. I. at 11.) Previously, Petitioner had served 100 months in federal prison, around eight to eight and a half years. (PCRH Tr. Vol. II. at 9.)

26. Ms. Calcagni testified that she expressed the Petitioner's wishes to serve less time than he had previously to Assistant Attorney General Katie Sibley, who was not receptive to the idea. (PCRH Tr. Vol. I. at 50.) From that point onward, several offers were discussed between Ms. Calcagni and Ms. Sibley, but none of them were as low as requested by Petitioner. As noted in Petitioner's Exhibit

---

[1] Petitioner, in his written closing arguments, briefly mentions that Ms. Calcagni's failure to pursue or bring up the idea of a conditional plea after losing the Motion to Suppress was "inexcusable and ineffective assistance" of counsel. (Pet'r's Closing Argument at 10.) Ms. Calcagni testified that she did not pursue a conditional plea after losing the Motion to Suppress hearing because she believed she "stood a good chance of prevailing on the appeal." (PCRH Tr. Vol. I. at 45.) This is another strategic decision made by Ms. Calcagni that must be deferred to by this court. Therefore, Ms. Calcagni's choice to not pursue a conditional please does not render her ineffective in accordance with this Post-Conviction Review.

2 and in Ms. Calcagni's testimony, five (5) offers were given and rejected by Petitioner in this matter. (PCRH Tr. Vol. I. at 64, 112); (Pet'r's Ex. 2.) The following offers made to Petitioner according to Ms. Calcagni were:

   a. July 13, 2015: A range offer of 10-15 years (Pet'r's Ex. 2. at 6);
   b. July 23-28, 2015: An offer for 10 straight years (PCRH Tr. Vol. I. at 59-60); (Pet'r's Ex. 2. at 10);
   c. August 3, 2015: Count 1 – 10 Years and a $400.00 Fine; Counts 2-8 Dismissed; (Pet'r's Ex. 2. at 12);
   d. August 18, 2015: 15 Years all but 9 years suspended and 4 years of probation (Pet'r's Ex. 2. at 16);
   e. August 24, 2015: 8 Straight Years (PCRH Tr. Vol. I. at 77.)

All of the above offers, except for the one on the day of trial, were well above the requested sentence limit set by the Petitioner.

27. Ms. Calcagni testified that all of the above offers were communicated to the Petitioner at or around the time they were received. Specifically, regarding the offer on July 13, 2015 she testified that she was "quite confident that I did discuss [the offer] with [the Petitioner]. (PCRH Tr. Vol. I. at 51-55.) As to the July 23, 2015 offer, Ms. Calcagni stated she would have informed the Petitioner of the offer either at the Motion to Suppress hearing or thereafter. (*Id*. at 60.) For the August 3, 2015 offer, which was the date of the docket call, Ms. Calcagni stated she either would have discussed the offer with the Petitioner at the docket call if he was present or during one of the many conversations she had with the Petitioner due to his frequent phone calls. (*Id*. at 68.) In reference to the August 18, 2015 offer, Ms. Calcagni was consistent in her statement that she would have either told the Petitioner during one of their many telephone calls, or during one of her visits to the jail in preparation for trial. (*Id*. at 72-73.) The last offer came the day of trial, August 24, 2015, for a straight 8 years which Ms. Calcagni remembers presenting to Petitioner in detail. (*Id*. at 77-78.)

28. Looking to the first four offers, similar to the discovery issue addressed earlier, Ms. Calcagni's lack of specific memories regarding these conversations does not render her ineffective. While this court does recognize that having written documentation of any offers made may be the best practice, as noted by Petitioner's expert witness, Andrew Wright, Esq., it is not explicitly required under Maine Rules of Professional Conduct 1.4. (PCRH Tr. Vol. II. at 91-92); *see* M.R. Prof. Conduct 1.4.

29. Furthermore, based on the evidence presented, Ms. Calcagni and the Petitioner communicated often through notes, letters, phone calls, and visits to the jail. Petitioner's claim that Ms. Calcagni did not visit him, and thus did not inform him of the first four pleas, is supported only by Ms. Calcagni's billing record. (Pet'r's Ex. 6.) Petitioner argues that because the billing record does not reflect that Ms. Calcagni called or met with him on or around the date of plea offers

7

they were not extended to him entirely. (Pet'r's Closing Argument at 5.) Ms. Calcagni testified that while she does not remember specifically when she spoke to the Petitioner about the offers, that she met with him often and at times lumped those meetings under the header "Prepare for Trial" in her billing statements. (PCRH Tr. Vol. I. at 74.) Simply, regarding the first four offers made, this court finds Ms. Calcagni credible in her testimony that she did in fact inform Petitioner as necessary under Rule 1.4 and her inability to have specific memories, or documentation of the offers being made to the client, are not enough to lead to an ineffective assistance of counsel claim.

30. Focusing on the final offer, made on the morning of trial, Ms. Calcagni and the Petitioner have significantly different recollections as to what occurred. Based on the testimonies presented, this court finds Ms. Calcagni credible and holds her testimony to be more reliable and accurate. Ms. Calcagni testified that she distinctly remembered the offer made on the day of trial, which was 8 years flat. (*Id.* at 77.) Ms. Calcagni informed the court that the offer occurred prior to the start of the trial, the offer was extended in the hallway outside of the courtroom, and Ms. Calcagni informed Petitioner about the offer in one of the attorney rooms in the courthouse. (*Id.*) Petitioner rejected the final offer. (*Id.* at 78.) Ms. Calcagni made clear to this court that she had concerns about Petitioner's case, that she feared he would lose, that she gave advice and recommendations to Petitioner based on these ideas, but that Petitioner made the decision to go to trial. (*Id.* at 79, 81.) Ms. Calcagni also testified that she remembered asking the court for time to allow her and Petitioner to discuss the new offer, and she does not recall "time being an issue." (*Id.* at 81-82.)

31. Petitioner claims that the final offer of 8 years was made in the courtroom, that he was not given an opportunity to discuss the offer, think about the offer, or make an informed decision because he only had moments to decide whether to take the offer. (PCRH Tr. Vol. II. at 32-34.) According to Petitioner's testimony, he was shocked by the offer and felt as if "a bucket of water [had been] thrown straight in [his] face." (*Id.* at 33.) In comparing the in-court testimonies of Ms. Calcagni and Petitioner regarding these two completely different accounts, this court does not find Petitioner's testimony credible and therefore places more weight on the testimony of Ms. Calcagni. Thus, it is the finding of this court: that Petitioner received the final offer of 8 years prior to trial; that he had the opportunity to discuss the offer with Ms. Calcagni; and that he knowingly and voluntarily chose to reject the offer and took the anticipated risk of trial. This decision by Petitioner turned out to be a mistake in hindsight and he now has obvious regrets.

32. This court also takes into consideration the exhibits of the parties wherein Petitioner on multiple occasions reiterates his stance that only an offer of less than what he had previously served was acceptable. Here is a list of relevant notes written by Petitioner throughout the case regarding a plea:

8

a. Petitioner's Exhibit 1: "Probative sentence of 20 all but 8";
b. Petitioner's Exhibit 3: "What about 15 all but 6?"; "I'd Rather not Do more than the 8 ½ like before";
c. Petitioner's Exhibit 5: "Will State take 15 all but 6?"; "Rather not do more than 8 ½";
d. Petitioner's Exhibit 7: "Will they take 20 all but 6 or 7?";
e. Petitioner's Exhibit 8: "20 – but 5; 4 probation?"; "20 all but 6 or 7?";
f. Petitioner's Exhibit 9: "Did you ask about a split sentence up to 20 with 6 or 7 to serve?";
g. Petitioner's Exhibit 10 & Respondent's Exhibit 5: "A large sentence may be warranted but a large portion should be suspended. Maybe even one sentence of say 20 years all but ? suspended with a ten year all suspended to run consecutive to achieve 6-8 years of probation"; "We must make it known that both you and I were willing to work on plea negotiations. However, the AAG waited 'til the morning of trial. They were down to 8 years flat. I wanted and still want 5-6 years in . . . ."

Based on all of the notes presented by Petitioner, it is clear that from the beginning of trial he wanted less than 8 ½ years, preferably 5-6 years of incarceration. This court finds Ms. Calcagni's testimony, that Petitioner received the first four offers and rejected them all, believable because the offers were far above what Petitioner wanted. The final note, Petitioner's Exhibit 10 and Respondent's Exhibit 5, is revealing in that the Petitioner notes that on the day of trial he wanted 5-6 years of incarceration rather than the 8-year offer that was made. This court concludes that this note shows that Petitioner understood the 8-year offer but rejected it because it still was not low enough in his opinion. Based on the testimony presented and the notes given to this court by the Petitioner, it is clear that Petitioner received all plea offers and rejected each and every one.[1]

33. Because this court finds Ms. Calcagni's testimony credible, she has demonstrated to the court that all plea offers presented to the Petitioner were rejected. In fact, even when he was presented with the flat 8-year offer, which fit into his original requirements of serving less time than he had previously, he still rejected the offer and chose to go to trial. This court does not find that Ms. Calcagni was ineffective in her assistance to the Petitioner. Based on the evidence presented, Petitioner properly received all plea offers, rejected all offers, and has failed to meet his necessary burden in an ineffective assistance of counsel claim.

---

[1] Petitioner's claim that Ms. Calcagni's testimony is false based on the statements of his mother, Karen Bowden, is not persuasive. (PCRH Tr. Vol. I. at 140-48.) Ms. Calcagni was not representing Ms. Bowden; therefore, the fact that Ms. Bowden does not recall being told about any plea offers does not negate Ms. Calcagni's testimony. Also, Ms. Bowden's claim that the Petitioner informed her he wanted to receive an offer of 8-10 years is directly contradicted by both his and Ms. Calcagni's testimonies because he received offers of 10 years or less and rejected them all. (*Id.* at 144.) Thus, this court does not find Ms. Bowden's testimony credible.

9

## CONCLUSION

34. This case originated in 2014, and based on the vast record accumulated, it was a long, drawn-out litigated matter that went from charging through an appeal to the Law Court. Petitioner acknowledges in his closing statement that Ms. Calcagni "aggressively litigated" his case and she did "admirable work in some aspects" of his case. (Pet'r's Closing Argument at 2.) Petitioner even told Ms. Calcagni that if he had to bring a petition for Post-Conviction Review "it [would not] be personal" and that when he is released from prison she "will always be [his] lawyer of choice." (Resp't's Ex. 13.) Considering that, and all of the above analysis, this court has narrowed down the two main issues in this case as follows: first, the memory of Ms. Calcagni; and, second, her strategic decisions during litigation. Neither of these issues, based on the testimony presented at trial and discussed above, is enough to rise to the level of an ineffective assistance of counsel claim.

35. As detailed above, in relation to the discovery and plea negotiation issues, an attorney's inability to testify to exact dates, times, and recall with complete accuracy interactions with a client from a case over three years old does not lead to an ineffective assistance of counsel claim. Ms. Calcagni, like many other ordinary fallible lawyers, may not have been able to recall exact recollections, but she was able to articulate her regular practices and informed the court that she followed those practices in this case. This court finds Ms. Calcagni's testimony credible and holds that her lack of precise memory does not render her performance ineffective.[*]

36. In relation to legal strategy at both the Motion to Suppress Hearing and the appeal, a court is required to be deferential to the strategy of the trial lawyer. Ms. Calcagni testified, and Petitioner's Exhibit 6 the billing statement shows, that she did extensive legal research in preparation for the Petitioner's defense. Furthermore, she contacted colleagues for advice in whether her legal theory and strategy was adequate in dealing with the issues surrounding the Motion to Suppress and the eventual appeal to the Law Court. (PCRH Tr. Vol. I. at 108-09.) The strong presumption in favor of the strategy of the trial lawyer exists here, and even without this high level of deference to the trial court, the evidence shows that Ms. Calcagni was effective in her representation of Petitioner. Just because her strategy was not successful does not mean that it was ineffective.

---

[*] Because this court deems that Ms. Calcagni's performance was not at issue, there is no need to do an analysis under the prejudice prong as to these issues. *Philbrook*, 2017 ME 162, ¶ 6, 167 A.3d 1266.

10

37. For the foregoing reasons, this court **DENIES** the above Petition.

Dated:  September 12, 2018

Judge Eric J. Walker
Maine District Court

Entered the docket ___9/12/18___